O'CONNOR, Respondent, vs. QUEEN INSURANCE COMPANY OF AMERICA, Appellant.

*October 5—October 26, 1909.*

*Fire insurance: What constitutes "fire:" Cause of loss: Court and jury.*

1. A fire built in a furnace with unsuitable material, which became in a measure uncontrollable and developed excessive and extraordinary heat, so intense in the chimney as to char woodwork, wall paper, and furniture, and which caused volumes of smoke and soot to escape through the registers and injure personal property in the house, was a "hostile" fire although there was no ignition outside of the furnace; and the damage to the personal property was "direct loss or damage by fire" within the meaning of the Wisconsin standard fire insurance policy. MARSHALL, J., dissents.

2. The question whether damage to insured property was caused by fire is ordinarily one for the jury, but its determination by the court is not error where the facts are practically undisputed.

APPEAL from a judgment of the municipal court of Outagamie county: T. H. RYAN, Judge. *Affirmed.*

Action upon a fire insurance policy. The servant of plaintiff built a fire in the furnace with paper and cannel coal, not used or intended to be used for such purpose, which fire developed within a few moments to such a degree of fury as to fill the house with great volumes of smoke, soot, and excessive and intense heat, and damage the personal property

therein to the amount as found by the jury $562. The only question submitted to the jury was the amount of damages, and the court directed a verdict for the plaintiff for the amount of damages found by the jury. Judgment was entered for plaintiff accordingly, from which this appeal was taken.

For the appellant there was a brief by *D. G. Classon*, attorney, and *Bates, Harding, Edgerton & Bates,* of counsel, and oral argument by *Mr. Classon.*

*Francis S. Bradford,* for the respondent.

The following opinion was filed October 26, 1909:

KERWIN, J. The policy in this case, being the Wisconsin standard form, insured the plaintiff "against all direct loss and damage by fire;" and the controversy is as to whether the loss and damage was caused by anything insured against by the defendant company. The question arises whether the fire 'which caused the damage was a fire within the meaning of the policy. The plaintiff lived in a rented house heated by a furnace. His servant built a fire in the furnace of material not for use therein or intended so to be used, and of such a highly inflammable character as to cause intense heat and great volumes of smoke to escape through the registers leading into the rooms and greatly damage plaintiff's property. The heat was so intense as to char and injure furniture, and the great volumes of smoke and soot greatly injured the furnishings and personal property of the plaintiff. It does not appear from the evidence that there was any ignition outside of the furnace, although the fire was so intense as to overheat the chimney and flues and char furniture in the rooms. The evidence shows that the chimney was so hot it seemed as though it was on fire; that the fire was burning fiercely in the furnace; around the mop boards was burned and the mop boards blistered; the wall paper charred and burned and the chimney cracked from the excessive heat.

It is the contention of appellant that the damage occasioned by heat, smoke, and soot is not covered by the policy where the fire is confined within the furnace. This position involves the construction of the words of the policy, "direct loss or damage by fire," and leads to a consideration of what fires are within the contemplation of the policy.

No limitation is placed upon the word "fire" by the language of the policy itself, but it is said that "contracts of insurance are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and proper sense." No doubt this is the general rule, but it must also be remembered in applying the rule that this and other courts have construed contracts of insurance favorably to the insured. *Karow v. Continental Ins. Co.* 57 Wis. 56, 15 N. W. 27; *Brady v. North Western Ins. Co.* 11 Mich. 425; May, Ins. (3d ed.) § 402; *Peters v. Warren Ins. Co.* 14 Pet. 99.

Appellant insists that a fire confined within the limits of a furnace, although producing damage by smoke and heat, is not a fire within the meaning of the policy in question, and relies mainly upon the case of *Austin v. Drew*, 4 Camp. 360. In that case the plaintiff was the owner of a sugar factory several stories high with pans on the ground floor for boiling sugar and a stove for heating. A flue extended to the top of the building with registers on each floor connecting with the flue to introduce heat. Because of the negligence of a servant in not opening a register at the top of the flue, or chimney, used to shut in the heat during the night, the smoke, sparks, and heat from the stove were intercepted and, instead of escaping through the top of the flue, were forced into the rooms, in consequence of which the sugar was damaged. The flames were confined within the stove and flue and no actual ignition took place outside thereof, and it was held that the loss was not covered by the policy. The Lord Chief Justice

said that there was no more fire than always existed when the manufacture was going on, and which continued to burn without any excess. The case seems to turn upon the point that the fire was the usual and ordinary fire, never excessive, and always confined within its proper limits. We shall briefly refer to other cases cited by appellant on this point.

In *German Am. Ins. Co. v. Hyman,* 42 Colo. 156, 16 L. R. A. N. s. 77, the loss was caused by an explosion produced by lighting a match, where the policy contained a provision that the insurers should not be liable for loss by explosion unless fire ensues, and in that event for the damage by fire only. *Samuels v. Continental Ins. Co.* 2 Pa. Dist. Rep. 397, was a claim for damages caused by smoke and soot from a lamp whose flame flared up above the lamp. *United L., F. & M. Ins. Co. v. Foote,* 22 Ohio St. 340, was a case of explosion excepted from the policy, and it was held that the fire was caused by the explosion; therefore the loss was occasioned by explosion. *Renshaw v. Fireman's Ins. Co.* 33 Mo. App. 394, is also an explosion case caused by ignition from a burning gas jet, and it was held that where the explosion is the direct result of the antecedent fire the policy covers it, but where the explosion is not occasioned by the fire there is no liability for the result of the explosion. In the one case the fire causes the explosion, and in the other the explosion causes the fire. *Briggs v. North A. & M. Ins. Co.* 53 N. Y. 446, is a case where the explosion was before the fire and not caused by the fire. *Transatlantic F. Ins. Co. v. Dorsey,* 56 Md. 70, was a case of explosion, and the main question was whether the fire was the direct cause of the explosion. 1 Wood on Fire Insurance (2d ed.) sec. 103, it is true lays down the general rule that no liability arises where the fire is confined within the limits of the agencies employed, referring to the case of *Austin v. Drew,* 4 Camp. 360, with the observation that the doctrine of that case had been considerably misconceived by courts and text-writers. *Gibbons v. German Ins. & Sav. Inst.*

30 Ill. App. 263, was a case of damage caused by the escape
of steam. *Case v. Hartford F. Ins. Co.* 13 Ill. 676, discusses
*Austin v. Drew, supra,* and discards the idea that there can
be no loss by fire without actual ignition. *Millaudon v. New
Orleans Ins. Co.* 4 La. Ann. 15, is a case where the damage
was caused by the explosion of a steam boiler; while in
*Waters v. Merchants' L. Ins. Co.* 11 Pet. 213, an explosion
of gunpowder is held to be a loss by fire where the thing
exploded was on fire. *American T. Co. v. German F. Ins.
Co.* 74 Md. 25, 21 Atl. 553, was a case of overheated boiler
owing to the absence of water. *Austin v. Drew, supra,* is
referred to, and it was held damage not covered by the policy.
*Cannon v. Phœnix Ins. Co.* 110 Ga. 563, 35 S. E. 775, is a
case where the fire was an ordinary fire in a stove. The fire
was what is termed in law books a "friendly" and not a
"hostile" fire. In this case the stovepipe became disarranged
and smoke and soot escaped, together with the water used in
cooling the ceiling causing the damage. *Austin v. Drew,*
*supra,* is cited in support of the opinion.

It will be seen from the foregoing cases relied upon by
appellant that the cases in this country in any way tending
to support appellant's contention rest upon the doctrine of
*Austin v. Drew,* which has not been extended, but limited to
the particular facts of the case, and the doctrine enunciated
therein criticised in some well-considered cases. We shall
briefly refer to some of the authorities. At page 929, § 402,
Mr. May in his work on Insurance discusses the doctrine laid
down in *Austin v. Drew* and concludes that if the doctrine in
that case is intended to go farther than the facts of the case
it has been deemed not to be good law by every high au-
thority. In *Scripture v. Lowell M. F. Ins. Co.* 10 Cush. 356,
the doctrine of *Austin v. Drew* is explained, and the court
says that lack of study of the case by courts and text-writers
has caused it to be misapplied, and refers to the language of
the Lord Chief Justice in *Austin v. Drew* to the effect that

the fire was an ordinary one and no more than always existed when the manufacturing was going on. *Singleton v. Phenix Ins. Co.* 132 N. Y. 298, 30 N. E. 839, is a case where a boat was loaded with quicklime in barrels. The boat was found to be on fire through the slacking of the lime. It was towed into the river and sunk to prevent total destruction. It was claimed that some water in the boat must have caused the slacking of the lime. Held, that the loss was by fire within the meaning of the policy. Further intimated that it may not be necessary to show actual ignition or combustion to establish a loss by fire. In *Way v. Abington Mut. F. Ins. Co.* 166 Mass. 67, 43 N. E. 1032, fire in the stove ignited the soot in the chimney, and the smoke and soot from the burning chimney escaped into the room and damaged property. Held, that such damage was covered by the policy insuring against all loss or damage by fire. The case seems to have turned upon the fact that the fire in the chimney was a "hostile" fire; therefore the damage caused by such fire was covered by the policy. In *Lynn G. & E. Co. v. Meriden F. Ins. Co.* 158 Mass. 570, 35 N. E. 690, it was held under an insurance policy against loss or damage by fire that damage to machinery in a part of the building not reached by the fire, caused by short circuiting of electric current, was covered by the policy. It was further held that the fire was the direct and proximate cause of the damage under the words of the policy, "direct and proximate cause." In *California Ins. Co. v. Union C. Co.* 133 U. S. 387, 10 Sup. Ct. 365, the words of a policy, "direct loss or damage by fire," are defined to mean loss or damage occurring directly from fire as the destroying agency in contradistinction to the remoteness of fire as such agency. In *German Am. Ins. Co. v. Hyman,* 42 Colo. 156, 94 Pac. 27, under an insurance policy providing that the insurer would not be liable for loss by explosion, it was held that if the fire precedes the explosion and the latter is an incident of the former and

caused by it, the insured may recover for his entire loss, but if the explosion precedes the fire and is not caused by it the insured can only recover for the loss by fire. In *Russell v. German F. Ins. Co.* 100 Minn. 528, 111 N. W. 403, it is held that to render a fire the immediate or proximate cause of the loss or damage it is not necessary that any part of the insured property actually ignited or was consumed by fire. In *Ermentrout v. Girard F. & M. Ins. Co.* 63 Minn. 305, 65 N. W. 635, the action was on a policy insuring plaintiff "against all direct loss or damage by fire," and the policy further provided that if the building fell "except as result of fire" the insurance on the building should immediately cease. There was evidence tending to prove that a building adjacent to the one insured caught fire and was partially consumed, and as a result of such fire fell, carrying down with it a partition wall and a part of the insured building. Held, that the fall of the insured building was "the result of fire" and "a direct loss or damage by fire," although no part of it ignited or was consumed by fire. Cameron in his work on the Law of Fire Insurance in Canada, page 51, discusses the effect of the word "direct" in policies providing against "direct loss or damage by fire," and says that the word has no significance or value, and whether used or not the fire must be the proximate cause of the loss or damage. See, also, Richards, Ins. Law (3d ed.) § 231, where it is said that the word "direct" in a policy means immediate or proximate as distinguished from remote, but that the proximate results of fire may include other things than combustion, as, for example, the resulting fall of a building, injuries to insured property by water, loss of goods by theft, exposure of goods during fire. See, also, Elliott, Ins. § 221, and Clement, Fire Ins. as a Valid Contract, 84–87.

The foregoing cases, we think, fully show that *Austin v. Drew,* 4 Camp. 360, is not authority against plaintiff here. There the fire was under control, not excessive, and suitable

and proper for the purpose intended. It was, in the language of the books, a "friendly" and not a "hostile" fire. In the case before us the fire was extraordinary and unusual, unsuitable for the purpose intended, and in a measure uncontrollable, besides being inherently dangerous because of the unsuitable material used. Such a fire was, we think, a "hostile" fire and within the contemplation of the policy. Ordinarily the question in such cases is for the jury. *New York & B. D. E. Co. v. Traders' & M. Ins. Co.* 132 Mass. 377; *New York & B. D. E. Co. v. Traders' & M. Ins. Co.* 135 Mass. 221; Richards, Ins. Law (3d ed.) § 231. But in this case the evidence being practically undisputed, we think no error was committed in directing a verdict for the plaintiff.

*By the Court.*—The judgment of the court below is affirmed.

The following opinion was filed November 13, 1909:

MARSHALL, J. (*dissenting*). I do not understand either the facts of this case or the law to be, in all respects, as indicated in the court's opinion. The court's language would indicate that, while there was no ignition outside the furnace or its connections, there was considerable burning to the extent of expelling volatile matter from paper, furniture, and mop boards, so as to create on their surface charcoal. "They were burned, charred, and blistered," is the language used, "though there was no ignition outside of the furnace." That language suggests that actual fire reached the injured parts of the house and furnishings so as to cause burning. I do not find that in the record. Here is all the record discloses, substantially in the language of the plaintiff: In the corner of the room around the register on the second floor, it was all burned, and the mop board blistered, and the wall paper was charred and burned to a perfect brown, and around the chimney was cracked in four or five places by the heat.

I did not see where any furniture was burned. I suppose it was damaged by heat; by the heat affecting the coal smoke which settled on the furniture. The heat seemed to make the smoke oily. Nothing in the house was set on fire. I think fire went up the registers by the way the wall paper looked and the mop boards. There was no burning other than the charring. There was no ignition except in the furnace. I do not know whether there was merely heat or was flame in the register. At the close of the plaintiff's evidence a question was propounded to him, as if he had testified the chimney was cracked, when he said he supposed that only the paper on the chimney was cracked. There was other evidence, fully corroborating that of plaintiff, that the fire was wholly confined to the furnace and its connections; that, at most, heat radiated therefrom with sufficient intensity to slightly char and blister mop boards and paper around one register; and that the chimney became so overheated as to cause the paper on the outside of it to crack. The damage was wholly by the radiated heat and there was no burning to the extent of charring, except of a trifling nature. The damage, except as to such trifling character, was caused by oily smoke which escaped from the furnace and its connections and discolored paper and furniture. That is the way I read the record.

Now the question is this: Is injury to the finish of a building by the radiation of heat from the house-heating furnace and its connections and escape therefrom of smoke, caused by a negligent fire in the furnace, the injury being to the extent of some slight charring and blistering of woodwork and paper near one or more of such connections, and cracking of paper and discoloration thereof and of furniture by the smoke, "direct damage by fire," within the meaning of the policy?

In solving the question suggested, other than to show exclusion of the particular case from the hazard insured against, it seems useless to refer to any case where there was actual

fire, ignition, and burning followed by an explosion, or explosion followed by fire, or fire outside its ordinary place, such as a furnace or stove, or fire causing the building ignited, or a part of it, to fall and injure another building, or fire caused entirely outside a furnace or other ordinary and proper place, thereby injuring insured property, or injury to one part of a building from accidental fire in another outside of an ordinary place therefor.

None of such situations, in my judgment, have any bearing on the case before us, and if used to show liability in the particular instance, only tend to confuse.

True, where there is a fire followed by an explosion causing loss, the damage is the direct though not the nearest cause of the loss. If it is the direct cause, in the sense of the result reaching back by a chain of causation to the fire as the efficient cause, it is the proximate cause in the sense the words of the insurance contract "direct damage by fire" are used. That is illustrated by *United L., F. & M. Ins. Co. v. Foote,* 22 Ohio St. 340, and similar cases.

Where there is an explosion followed by a fire, the latter, though the nearest, is not the direct, in the sense of being the proximate, cause. That is illustrated by *Transatlantic F. Ins. Co. v. Dorsey,* 56 Md. 70, and similar cases. In such situations as the former, the fire and damage are mere incidents of the explosion; in the latter, the explosion and damage are mere incidents of the fire. But, as before indicated, neither situation, nor any of those suggested, it seems, has any similarity to a case of damage caused by an excessive and dangerous radiation of heat from a furnace and its connections, and escape of smoke and fire caused by the negligent placing of an unusual fire therein, such damage consisting of some trifling charring of a part of a structure, adjacent to some of such connections, and discoloration of finishing and furniture by smoke.

Precedents properly used are helpful. Improperly used

they are not. They may, and are quite likely to, be the very opposite. If each case was decided by squaring it, as near as might be, with some particular previously decided case, or several of them, unmindful of the underlying controlling principles, with the humane leanings which characterize judges, as well as others, in favor of the weak and humble, and perhaps properly in cases of reasonable doubt, the human inclination so admirable, would be liable to create doubts in the mind where none need to exist, in fact, resulting in a decision now and another then, and again another, and so on *ad infinitum,* each on some more or less extreme view, and the unwritten law would become as a kaleidoscope, presenting, as handled, an endless variety of situations fitting, apparently, with most delightful similarity, causes as they arise, leading to results entirely out of harmony with that definiteness of rule which dignifies the law as a science.

So it seems we must look to the precedents, many of which are found in the opinion, not to see what is indicated in any particular case under particular facts, but to discover the logical basis of all—the underlying principle. Having discovered that and tied firmly to it, we can proceed with considerable certainty to a correct result. Having started with the basic member of our syllogism, we can proceed with logical steps to an inevitable conclusion, with the certainty of true logic.

What is the basic theory of the cases cited in the court's opinion? Though it seems not to have been kept clearly in view in every instance, is it not that, the term of the policy in question, "direct loss or damage by fire," excludes fire so long as it is confined to its appropriate place, as a stove or furnace, and contemplates fire as a producing cause existing outside of any such place. It is, seemingly, conceded that those words do not mean a fire, so long as confined in its appropriate place. So the proximate resulting loss must refer to a proximate cause fire, and if, following back from the

former, we must reach the fire in the stove before we find any fire at all, how can we well say that the loss was proximately caused by fire? What is the logic of the numerous explosion cases cited in the court's opinion? Is it not this? If following back, step by step, from the injury we reach the explosion as a mere link in a chain, starting with a fire which, had it immediately caused the loss, would be within the field covered by the policy, that there is responsibility of the insurer; if, on the other hand, in tracing back to the real origin of the loss, we pass the fire and reach the explosion as a producing cause, which is not within the risk covered, then the fire is a mere incident or link in the chain of causation, terminating with the explosion as the proximate cause of the disturbance; of the injury itself at the other end of the chain. In substantially every one of the cases cited, and a multitude that might be referred to, the proximate cause was fire of a responsible character, as regards the insurance risks; not fire in a stove or a furnace, though, in many, there was a chain of disturbances reaching therefrom to the disaster, as in the case of the fire in *Ermentrout v. Girard F. & M. Ins. Co.* 63 Minn. 305, 65 N. W. 635. In this case there was a fire in a building of a character, within the terms of the insurance policy, which so destroyed the building as to cause a wall thereof to fall and injure the adjacent insured building. Had the fire been wholly in a furnace, resulting in such overheating and such radiation of heat as to cause the wall to fall, carrying down in part the adjacent building, I apprehend no one would seriously have thought the loss was covered by the policy, because in tracing the result back to find the proximate cause, it would not have been found to be within the policy. With few exceptions, that test could safely be applied to all the cases. It follows the logic of *Austin v. Drew,* 4 Camp. 360, which, in my judgment, has never been criticised except as it has been misunderstood. It did not go on the mere fact that the fire was a usual and so "a friendly

fire," but upon the ground that the fire was in its proper place and all the results were mere incidents thereof, *i. e.* the proximate cause was the fire in the stove because there was no fire elsewhere.

As so much is said about *Austin v. Drew,* it may be well to show just what the facts and the decision were. There was an overheated stove, caused, by negligent mismanagement of it, as in this case. It matters not that the mismanagement there was in producing overheating and causing smoke, heat, and sparks to escape into the building, but without producing any fire outside of the stove or its connections, by failure to properly manipulate the register, and that substantially the same results were produced here by mismanagement of the fire itself. The court now puts some stress on the fact that GIBBS, C. J., said, in the opening part of the opinion, that the fire itself was not unusual. But that is not the gist of the decision. It is that nothing outside the stove was, by fire outside thereof or otherwise, consumed. This language was used: "Nothing was consumed by fire. The plaintiff's loss arose from the negligent management of the machinery" (referring to the connections of the stove). While the judge was pronouncing his opinion he was thus interrupted by a juryman:

"If my servant by negligence sets my house afire, and it is burnt down, I expect, my Lord, to be paid by the insurance office," etc.

To which the Lord Chief Justice replied:

"And so you would, sir; but then there would be a fire, whereas here there has been none. If there is a fire, it is no answer that it was occasioned by the negligence or misconduct of servants; but in this case there was no fire except in the stove and the flue, as there ought to have been, and the loss was occasioned by the confinement of heat. Had the fire been brought out of the flue, and anything had been burnt, the company would have been liable. . . ."

Thus it will be seen that the real gist of the decision is in the language, "Had the fire been brought out of the flue and anything had been burnt, the company would have been liable." The logic of that is this: Then there would have been a fire within the calls of the policy, which would be referred to as the proximate cause of the loss. To that extent the doctrine of that case has not been criticised in any well considered opinion, or by any text-writer understandingly.

It should be noted that, in *Austin v. Drew,* actual ignition outside the stove was not made a condition precedent to a recovery, but fire outside was made such condition. There might be fire outside and burning, in the most restricted sense of the term, without ignition, and the policy would be satisfied; but, in case of burning without any fire outside, burning to the extent of mere charring produced by radiated heat from the surface of the stove and its connections, then the policy would not be satisfied. Where the attempt has been made to extend the *Drew Case* so as to call for *fire outside the stove and actual ignition,* it has been generally, and properly, unsuccessful. If it has ever been criticised or limited so as to allow a recovery where there was no fire outside the stove or furnace, and no burning, otherwise than a little charring and discoloration by radiated heat from a stove and its connections, or to allow a trifling injury of that kind to draw to it and include a far greater damage, caused by mere heating, without burning in any sense, and damage from smoke, caused by fire inside the stove, I have been unable to discover it, and the court has not been any more successful, as indicated by the cases relied on.

Joyce on Insurance, at sec. 2796, citing numerous authorities, adopts the rule of *Austin v. Drew,* as I have explained it, as regards all damages caused by overheating and smoke produced wholly by fire, whether negligently handled or not, in a place where it may properly be.

In 1 Wood on Fire Insurance (2d ed.) sec. 103, *Austin v.*

*Drew* is referred to, as to all such injuries as we have in this case; this language being used:

"In order to bring such consequences within the risk, there must be actual ignition outside of the agencies employed, not *purposely* caused by the assured, and these, as a consequence of such ignition, *dehors* the agencies."

It should be noted that while Mr. Wood says there must be actual ignition outside of the usual agencies, he does not, necessarily, and I think does not in fact, mean ignition of the insured property. He means no more than that there must be actual fire outside of such agencies, and that such fire must proximately cause the loss.

2 May on Insurance (4th ed.) § 402, inferentially criticises the text in Wood upon the theory that it is to the effect that actual ignition of property insured is a condition precedent to a recovery, in a case of this sort, and argues, from authority, that damage by fire is within the terms of an insurance policy containing language similar to the one before us, although there is no ignition of any property covered by the policy, illustrating by cases of actual fire which would be within the risk in case of its immediately causing the damage, and proximately did cause it without combustion of any part of it, as where a fire originated outside a theater, heated its walls, and set them on fire. *Sohier v. Norwich F. Ins. Co.* 11 Allen, 336. Damage by fire originating in the theater was excepted from the policy. As we may well say, fire originating and kept in the house furnace was, by necessary implication, excepted from the policy here. It was because there was fire outside the excepted zone, which reached the theater and caused the damage, that the recovery was allowed. Such illustrations, instead of condemning, rather support the text in Wood as to the scope of *Austin v. Drew,* properly understood.

In *Scripture v. Lowell Mut. F. Ins. Co.* 10 Cush. 356, many of the erroneous notions of the scope of *Austin v. Drew,*

which have misled text-writers and courts, are referred to. It is shown that some have supposed the decision went upon the ground of carelessness of servants; others that it went upon the ground of damage to things in process of manufacture by means of the fire in the stove; and others that it went on the ground of there having been no ignition of any property covered by insurance. CUSHING, J., after repudiating all of such notions as illegitimate, stated what was decided, as confined to the facts, but plainly pointed out the real rule of the case by saying:

"If, in *Austin v. Drew, the fire had been where it ought not to be,* if, even with careless management, it had burned the building, . . . the insurers would have been held to be liable for the loss."

In other words, *if the fire had escaped from the stove and anything had thereby been burned the loss would have been recoverable.*

That is in harmony with the following: *Babcock v. Montgomery Co. Mut. Ins. Co.* 6 Barb. 637; *Gibbons v. German Ins. & Sav. Inst.* 30 Ill. App. 263, 265; *Western W. M. Co. v. Northern Assur. Co.* 139 Fed. 637; *Cannon v. Phœnix Ins. Co.* 110 Ga. 563, 35 S. E. 775; *Samuels v. Continental Ins. Co.* 2 Pa. Dist. Rep. 397.

The text in Wood on Insurance, in the sense intended, has been many times sanctioned. The following language of the court in *American T. Co. v. German F. Ins. Co.* 74 Md. 25, 21 Atl. 553, is a good illustration:

"If a person has his house insured against all loss or damage by fire, and he should make a fire in his grate or fireplace of such intense heat as to crack his chimney, or to warp or crack his mantlepieces, it could hardly be contended that he should hold the insurance company liable for such damage, though the damage was unintentionally allowed to be produced by the action of fire. In such case the fire would not have been extended beyond the proper limits within which it

was intended to burn; but the heat emitted therefrom would
have produced effects not intended by the insured.

"No doubt there are many instances where the insurer has
been held liable for injury done to buildings and furniture
by heat or smoke, *without actual ignition,* where the heat or
smoke has proceeded from fire outside of and beyond the
limits of the place where it was intended, by the contract of
insurance, to burn.  But that is a different question. . . ."

That Mr. Wood did not intend that there must, necessarily,
be ignition of the property insured as a condition precedent
to a recovery, but only that there must be a fire at least out-
side its proper place, and cause the damage, proximately,
either by charring or smoking or unduly heating with or
without ignition, of the property insured, or ignition of some
other property and proximately reaching and damaging the
property insured by ignition or otherwise, is evidenced by
the following language of sec. 104:

"There must be an accident by fire to lay the foundation
of a claim.  By this it is not meant that the property itself
must have been on fire, but that there must have been either
an ignition of the property itself, or of other substances or
property nearby to it, which was the proximate cause of the
loss.  Fire [that is, as applied to the facts of this case, fire
outside of the furnace] must have been the proximate cause
of the loss.  This rule does not require that the property it-
self should have been burned by the fire or even injured di-
rectly by the fire at all, but simply that the fire must have
been the proximate cause of the injury."

That is, as applied to this case, fire, having an identity as
such, and which could be pointed to as a proximate cause,
outside of the furnace must cause the loss.

Mere charring does not require fire in the thing charred or
direct application of fire.  It is caused by fire, but not, neces-
sarily, by fire outside its proper place, satisfying the calls of
the policy.  Such a fire requires luminosity outside its proper
place.  *Western W. M. Co. v. Northern Assur. Co.* 139 Fed.
637.  Without that there may be charring by radiated heat

from some luminous substance inside its proper place as in this case.

I must not pass the suggestion of the court that CUSHING, J., in *Scripture v. Lowell Mut. F. Ins. Co.* 10 Cush. 356, stated that the logic of *Austin v. Drew,* 4 Camp. 360, is that the fire in question was an ordinary fire. I do not so read Justice CUSHING's language, as I have before indicated, but rather that the learned Massachusetts court, in addition to limiting the decision to precise facts, damage to things in the process of manufacture by a negligently managed fire in its proper place, said, as plainly, it seems, as need be, that the gist of the decision is, that there was no fire at all outside its proper place.

In *Way v. Abington Mut. F. Ins. Co.* 166 Mass. 67, 43 N. E. 1032, there was a fire started in a chimney, causing the lining thereof to fall, and soot and smoke to escape and damage the insured property. I assume my brethren relied much on that. It is, however, in perfect harmony with *Austin v. Drew,* and also with *Cannon v. Phœnix Ins. Co.* 110 Ga. 563, 35 S. E. 775, conceded, as I understand it, to be against the conclusion here and in harmony with all that I have said. The Massachusetts case went upon the ground that the chimney was no proper place for a fire; that when it started it was an independent cause, one separate and distinct from the fire in the stove, and outside the proper place for a fire and so was within the risk insured against; that the ignition within the chimney being a sufficient fire to satisfy the calls of the policy, no ignition outside thereof was necessary to a recovery. *Austin v. Drew* was approved and followed. The court seemed to appreciate that it was going a great way to include fire in a chimney, incidental to a fire in a stove, within the meaning of "fire" as used in a policy of insurance, yet was careful to dignify it as a fire separate and distinct from that in the stove, before concluding that there could be a recovery. "We are inclined to the opinion," said the court, "that a dis-

tinction should be made between a fire intentionally lighted and intended for a useful purpose in connection with the occupation of a building, and a fire which starts without human agency in a place where fires are never lighted nor maintained."

I am unable to discover any authority cited which comes as near supporting the decision from which I dissent as the one just referred to. That, however, as is the case with all others, clearly involved actual fire within the calls of the policy, which immediately and proximately, or the latter, caused the damage.

In closing I will notice that the fire in question is referred to as "unusual," as if that took the case out of *Austin v. Drew.* That theory was repudiated in *Scripture v. Lowell Mut. F. Ins. Co., supra,* recognized here and by most text-writers and courts as having stated clearly the gist of *Austin v. Drew,* and fenced out the numerous erroneous theories indulged in by some, as a basis for criticism, or decisions one way or the other, according to circumstances. The fire is also referred to as a "hostile fire," adopting language coined by the Massachusetts court in *Way v. Abington Mut. F. Ins. Co., supra,* as if, within the doctrine of that case, a fire built in a furnace and confined thereto may become a "hostile fire" merely by becoming uselessly and negligently too large. The term "hostile fire" is misapplied, it seems, here. It was used by the Massachusetts court as an appropriate characterization of a fire started accidentally in a place not designed for that purpose. Obviously, if in that case the fire had been started by the assured in the chimney, it would not have been called a "hostile fire," and within the calls of the policy, merely because it became unexpectedly large and destructive. It was suggested in the opinion that had the fire been set in the chimney it would not have been what was denominated a "hostile fire."

The importance of the subject treated justifies, it is

thought, the length of this opinion. If I am right in the idea that the court has gone beyond any substantial support in the books, especially in allowing the recovery for damages wholly caused by radiated heat, without even charring, and by smoke, what I have written may be helpful when the question shall again be presented.

The opinion written for the court, doubtless, supports the decision rendered as fully as it can well be done. It states clearly the court's position that radiated heat and smoke from a fire, wholly confined to a furnace in which the fire is made for an ordinary purpose, causing charring of house finish and discoloration of woodwork and furniture, is within the calls of the standard policy of this state for a remediable loss directly caused "by fire."

In my opinion, the judgment should be reversed, and the cause remanded for a new trial, or for judgment for the defendant. It has not been necessary to study the case carefully to discover which of the alternatives is the right one.