# THE FIRST CHRISTIAN CHURCH AND ITS TRUS-TEES v. THE HARTFORD MUTUAL INS. COMPANY et al.—276 S. W. (2d) 502.

Eastern Section. April 20, 1954.[1]

---

[1]No petition for certiorari was filed in this case. Ordinarily, this court does not publish its opinion unless certiorari has been applied for and denied. However, due to the fact that the question involved is a first impression in Tennessee and because of many requests that we do so, it is put down for publication. It must be understood that if this question is ever presented to the Supreme Court of Tennessee it may not agree with the conclusions herein announced.

Maupin, Berry & Coleman and S. J. Milligan, all of Greeneville, for plaintiffs in error.

F. H. Parvin, of Greeneville, for defendants in error.

HALE, J. This case is improperly styled. The plaintiff Church and its Trustees obtained a judgment against the defendant insurance companies which have perfected this appeal.

The question before us grows out of that part of the law on insurance relating to "hostile" and "friendly" fires, and, except for an incidental mention in Allied American Mutual Fire Ins. Co. v. Wesco Paving Co., 35 Tenn. App. 154, 243 S. W. (2d) 141, is of first impression in Tennessee so far as our reported cases are concerned.

The First Christian Church of Greeneville, herein called the insured, had policies of insurance with the Hartford Mutual Insurance Company, and New York Central Mutual Fire Insurance Company, herein called insurers, which covered "all direct loss by fire" to the church building, and was on a "church form" which included * * * stationary heating * * *."

On the night of Sunday, October 12, 1952, by what may be termed either accident or negligence, the heat generated by the coal furnished by the stoker was too great for the water in the boiler, with the result that the water was evaporated, and the boiler melted and rendered completely useless. The heat melted or burned off about five inches of the insulation on two wires leading to the thermostat control, the wooden wall at the rear of the furnace was blackened, and the paint was burned off the top part of the steel jacket covering the boiler. There is no evidence whatever of any outside fire or that the fire escaped from the fire box. Or, as stated by the Church's witness, Mr. Ricker, this damage was caused by the fact that there was fire and no water; that there wasn't a drop of water in the boiler after the fire; that the furnace would not have melted had there been any water in it.

There was no appreciable damage done to anything other than the furnace. There was no claim that the blackened wood had been charred. In short, the only evidence offered as to the damage related to the value of the furnace.

Under these circumstances it is evident that this was a "friendly" as distinguished from a "hostile" fire which caused the damage to the furnace.

The pleas of the insurers asserted this as a defense to the claim of the insured. Trial without a jury resulted in a judgment in favor of the insured. The insurers have perfected this appeal and have squarely presented this question now before us.

In Appleman's Insurance Law and Practice, Vol. 5, Sec. 3082, pp. 211-212, it is said:

"The distinction most commonly made by courts in considering contracts of fire insurance is that drawn between 'hostile' and 'friendly' fires. If the

fire burns in a place where it is intended to burn, although damages may have resulted where none were intended, the fire is a friendly fire, and the insurer is not liable for damages flowing therefrom. A friendly fire refers to one which remains confined within the places intended, and refers to a fire in a furnace, stove or other usual place. A hostile fire, on the other hand, refers to one not confined to the place intended, or one not intentionally started; and it is generally considered to refer to such a fire which, if it had pursued its natural course, would have resulted in a total or partial destruction of the insured property. When a friendly fire escapes from the place it ought to be to some place where it ought not to be, causing damage, it becomes a hostile fire for which the insurer is liable.''

The law as stated in 45 C. J. S., Insurance, Sec. 809, pp. 861-862, is:

''While there seems to be authority to the contrary, it must be a hostile fire, that is, one which becomes uncontrollable or breaks out from where it was intended to be, and becomes a hostile element, and, where there is such a fire, recovery may be had for resulting losses or damages with regard to which there has been no actual ignition, such as a loss or damage caused by smoke and soot, or by heat.

''Where the fire is a friendly one, that is one which is employed for the ordinary purpose of lighting, heating, or manufacturing, and is confined within its usual limits, as in case of a blaze produced by lighting a match, or a gas jet or lamp, it is not a fire within the usual terms of a policy, and recovery cannot be had for loss or damage caused thereby, such

as damage caused by heat which does not result in ignition, or by smoke or soot.''

(Note. The ''authority to the contrary'' mentioned in the first paragraph of the foregoing quotation is the Louisiana Court of Appeals case of Salmon v. Concordia Fire Ins. Co. of Milwaukee, 161 So. 340, cited by the insured and hereinafter referred to.)

American Jurisprudence, Vol. 29, p. 767, ''Insurance'', Sec. 1016, says:

''A distinction is usually drawn by the courts between a friendly and a hostile fire, and it is held that if fire is employed as an agent, for the ordinary purposes of heating the insured building. * * * the insurer is not liable for the consequences there, so long as the fire is confined within the limits of the agencies employed * * *.

''If the fire is a hostile one, damage from heat is within the coverage of a fire insurance policy although actual ignition does not take place; and a recovery may be had under a policy insuring against loss happening by fire, for damage resulting from an adjoining burning house, althought there was no actual ignition of the property insured.''

The Texas case of Reliance Ins. Co. v. Naman, 118 Tex. 21, 6 S. W. (2d) 743, 744, contains a very interesting discussion of friendly and hostile fires. A housewife had hidden some jewelry in a hat box for safekeeping, but one of her servants, thinking it was trash, threw the box in the furnace where it was destroyed. The insurer was absolved from liability, the court saying:

''The policy having insured the appellee 'against all direct loss or damage by fire,' it becomes important to determine whether or not the loss in this case has been sustained by 'fire' within the meaning of

that contract. It is uniformly held that the loss must be by a hostile fire; that is, one which becomes uncontrollable or breaks out from where it was intended to be, and becomes a hostile element." (Citing authorities.) Further,

"Where the fire which occasions the damage is confined to the usual and ordinary place, such as the range, grate, or furnace, it is usually denominated a friendly fire, and as such not a fugitive one within the contemplation of the contract of insurance."

In the subsequent case of Progress Laundry & Cleaning Co. v. Reciprocal Exchange, Tex. Civ. App., 109 S. W. (2d) 226, 227, there was involved the liability of the insurer for damages done to a boiler by a friendly fire. Said the court:

"In Reliance Ins. Co. v. Naman, 118 Tex. 21, 6 S. W. (2d) 743, 745, the Supreme Court of Texas held that, when a fire which occasioned damages is confined to the usual and ordinary place, such as a fire burning in a furnace, or a stove, or a lamp, where it was intended to burn, it is considered a friendly fire, and damages that may be caused by such a fire are not considered to be within the terms of an ordinary insurance policy. The following language of the Supreme Court in that case is helpful in suggesting illustrations of friendly fires not insured against, viz.: 'If the fire in the furnace was such a fire as the company insured against, then it would be liable for any direct loss or damage therefrom, and it would follow the insured could recover his damage for loss occasioned by the cracking of the plaster in the furnace basement from the heat of the furnace, for the cracking of the paper on the walls from the heat of the grate, and for damage to the decoration and

draperies through smoke and soot from the furnace or chimney place, and even for the replacement of furnace, grate, and range oven when burned out, for those clearly would be losses directly due to the respective fires. Those are not extreme illustrations, but liability in each instance would follow if the fire in this case be held to be within the policy.'

"In American Towing Co. v. German Fire Insurance Co., 74 Md. 25, 21 A. 553, plaintiff sued for damages to a boiler. The boiler was damaged due to the absence of water. It was there determined that the plaintiff could not recover because the damages resulted from a friendly fire. So, also, is the case of McGraw v. Home Ins. Co., of New York, 93 Kan. 482, 144 P. 821, Ann. Cas. 1916D, 227; there, the plaintiff sought judgment upon a fire insurance policy on account of injury done to a steam boiler by fire when the boiler was supplied with an insufficient amount of water. The court held that no liability attached to the insurance company because of the intended application of the fire to the boiler, and that the loss or damage was occasioned not by a hostile element (the fire), but was due to negligence of the boiler operator in allowing the water to become exhausted. In that case, the fire was a friendly agency, intentionally applied and confined in the usual and customary place, within the contemplation of the policy of insurance. There the damage to the boiler was the direct result of negligence of the operator of the boiler, and in no sense attributable to an uncontrollable or hostile agency. To the same effect is the holding of the Waco Court of Civil Appeals in the case of City of New York Ins. Co. v. Gugenheim, 7 S. W. (2d) 588."

The case of Spare v. Glens Falls Ins. Co., 137 Conn. 105, 75 A. (2d) 64, 65, involved a situation similar to that presented by the instant record. Said the Court:

"The only fire involved in the incident which constitutes the basis of this action was the oil fire which burned within the combustion space or spaces inside the furnace itself, from which it did not escape. No fire occurred outside of that in the furnace as so confined. The exterior of the furnace did not itself become kindled. Fire which burns within a furnace in the combustion space is a friendly fire. Since this fire did not escape to the outside part, it did not become a hostile fire. * * *

"When, however, a friendly fire escapes from the agency employed to restrain it and damages property by igniting it or, while still confined therein, causes a secondary fire to start outside of the agency, it becomes a hostile fire, and for loss so caused the insurer must indemnify the owner. Accordingly, the distinction is clearly drawn between a case where, as here, damage results in consequence of excessive heat from a fire confined as designed, with no external burning, and one where such excessive heat kindles a secondary fire. It was remarked in a similar case: '* * * there was excessive heat, but no fire where it ought not to have been. Fire and heat are not one, but cause and effect; and damage by heat is not insured against in terms, and is covered by the policy only where the misplaced fire causes it.' Gibbons v. German Ins. & Sav. Ins. Co., 30 Ill. App. 263''.

In Wasserman v. Caledonian-American Ins. Co., 326 Mass. 518, 95 N. E. (2d) 547, 548, the facts were:

"The premises were heated by an oil burner installed in the cellar. On the morning of Jan. 3, 1947, it was discovered that the burner was operating, sending a flame in the usual way into the boiler, which was cherry red and emitting sparks. It was later learned that there was no water in the boiler. The oil burner functioned normally and as intended except for the lack of water. The excessive heat cracked the boiler and damaged the ceiling, but no sparks or fire came in contact with the ceiling."

The court held the insurer was not liable, citing Appleman, supra, Am. Jur. supra, and also the cases of Hanson v. Lemars Mut. Ins. Co., 193 Iowa 1, 186 N. W. 468, 20 A. L. R. 964, and Coryell v. Old Colony Ins. Co., 118 Neb. 303, 312, 224 N. W. 684, 229 N. W. 326, 68 A. L. R. 222, both of which are thoroughly annotated on this question of friendly and hostile fires.

In the case at bar it was stipulated that the janitor of the church would testify that on the Sunday afternoon prior to the fire, he examined the furnace and that it had the proper amount of water in it and the mechanism was working properly. We assume that "mechanism" included the stoker. This would bring the case squarely within the statement of facts in the Wasserman case, supra.

The case of Mitchell v. Globe & Rep. Ins. Co., 150 Pa. Super. 531, 8 A. (2d) 803, 804, is also quite similar to the case at bar. A boiler was drained of water but by the negligence of an employee a fire was started which damaged the furnace. In holding the insurer was not liable the court referred to a large number of cases making the distinction between friendly and hostile fires, and then made the very pertinent observation:

"The principle properly deducible from the cases is that if the fire is confined wholly within the fur-

nace, stove, heater, etc., which was installed for the purpose of having a fire within it, loss or damage which may occur only to the heating appliance or device installed to contain the fire, by overheating, or lack of water, or other improper handling, is not covered by the insurance policy; whereas if it results in ignition and fire outside the heating appliance, causing loss or damage to any insured property, such loss or damage is recoverable under the policy.''

In Youse v. Employers Fire Ins. Co., 172 Kan. 111, 238 P. (2d) 472, 477, there was involved the accidental destruction of a ring in a trash incinerator. It was held this was a friendly fire and there was no liability citing as authority the quotations heretofore made from Appleman, American Jurisprudence and Corpus Juris Secundum. The opinion refers to Salmon v. Concordia Fire Ins. Co. (La.), hereinbefore mentioned and hereinafter quoted, saying, ''With all due respect to the Louisiana court, we are convinced the decision is not in harmony with the general weight of authority''.

The New Hampshire Supreme Court, in Consoli v. Commonwealth Ins. Co., 97 N. H. 224, 84 A. (2d) 926, 927, had before it the question of the insurer's liability for damage caused by an overheated range where the fire was entirely confined to the fire box of the range. There was discussed the question of friendly and hostile fires and after citing some of the authorities hereinbefore mentioned the Court referred to 24 Harv. L. Review, 119; 37 Yale Law Journal 264; and 49 Harv. L. Review, 485, and as well, the attack made upon the distinction in Vance Friendly Fires, 1 Conn. B. J. 284. Then the Court refers to the Salmon case relied upon by the insured (and hereinafter quoted) saying: ''But the decision of the Louis-

iana intermediate court has not been followed by any court of last resort."

Then it was said: "The only case which considered excessive heat constituted a hostile fire is O'Connor v. Queen Ins. Co., 140 Wis. 388, 122 N. W. 1038, [1122], 25 L. R. A., N. S., 501 and recent decisions have not followed it." The opinion then states:

"Only last year the whole problem of overheated oil burners causing damage by excessive heat was reconsidered in Connecticut and Massachusetts and it was held that they were friendly fires not covered by the fire insurance policies. (Citing the Spare and Wasserman cases, supra.) There cases state the rule as it exists today and as it has been in the United States for more than a half century. Way v. Abington Mut. Ins. Co., 166 Mass. 67, 43 N. E. 1032, 32 L. R. A. 608; Patterson, Insurance Law During the War Years, 46 Col. L. Rev. 345, 362."

In Davis v. Law Union & Rock Ins. Co., 166 Misc. 75, 1 N. Y. S. (2d) 344, 345, the fire was confined to an oil furnace causing smoke damage. It was held this was a friendly fire and no recovery could be had. The Court quoted from Solomon v. United States Fire Ins. Co. of N. Y., 53 R. I. 154, 165 A. 214, which said:

"'The damage in the case at bar was caused by one fire which was intentional and within the place where it was intended to be. The fact that this fire was excessive and that flame for a short time was seen to be outside the furnace did not change the nature of the fire. The material consumed and the combustion thereof was not accidental; it was intentional. * * * The flame outside the furnace was merely an extension of the flame within the furnace,

and was subject to one and the same control. No second fire resulted from the intentional fire.'"

The Davis case also cites Lavitt v. Hartford County Mutal Fire Ins. Co., 105 Conn. 729, 136 A. 572, 574, involving smoke damage, which said:

"It was early held that the word 'fire' as used in polices of fire insurance meant 'hostile fire' as distinguished from 'friendly fire.' The leading case is that of Austin v. Drewe, 4 Campb. 360, 128 English Reprint, 1104."

Lavitt then refers to the criticism of Austin v. Drew in O'Connor v. Queen Ins. Co., 140 Wis. 388, 122 N. W. 1038, 25 L. R. A., N. S., 501, wherein the majority opinion suggests the test to be, in effect, "whether 'the fire was extraordinary and unusual, unsuitable for the purpose intended, and in a measure uncontrollable * * * inherently dangerous because of the unsuitable material used.'" Then said Lavitt, "This was clearly based upon the facts of that particular case."

Then in discussing friendly and hostile fires the opinion concludes:

"Though the present distinction may seem arbitrary, yet it is of long standing, makes for certainty in the ascertainment of rights, and has been acted upon in the writing of so vast a number of insurance contracts throughout this country that its soundness may not, at this time, be questioned. The rule has had well nigh universal approval in those courts in this country where the question has directly arisen and by text-writers generally." (Citing authorities.)

The Supreme Court of Idaho, in Mode v. Fireman's Fund Ins. Co., 62 Idaho 270, 110 P. (2d) 840, 843, 133 A. L. R. 791, had before it the accidental burning of antique jewelry in the incinerator. There was again this

question of friendly and hostile fires, and the citation of a great number of authorities, some of which have herein been quoted from, and that it was said:

"The meaning of the term 'loss by fire' as being a 'hostile' and not a 'friendly fire' has been so extensively and long recognized that reasonably we must consider, even under liberal interpretation, that both insured and insurer contracted with such definition in mind, determinative of what losses were covered."

This was approved in the subsequent case of Pacific Fire Ins. Co. v. Anderson, D. C. Idaho, 47 F. Supp. 90, 91, wherein it is said:

"The fundamental thought as recognized by the Courts is that if a fire is a friendly fire, that is, one in a furnace or stove, which is subject to control in such furnace or stove, and one not escaping therefrom, it is not covered by the policies. But if it is a hostile one it is a peril insured against, and to be a hostile one it must extend from the place where it belongs and must pass beyond the limits assigned for it, and be an independent combustion wholly outside the original agency in which it was intended to burn."

We have referred to the opposing authority of Salmon v. Concordia Fire Ins. Co., La. App., 161 So. 340, 343. In that case a bracelet was destroyed by being accidentally thrown in a trash burner. Said the court:

"We are unable to see the difference between an accidental loss resulting from a 'friendly' fire and an accidental loss caused by a hostile fire. In both instances the loss is the direct result of the fire against which the insurer agreed to indemnify the insured. The fact that in one case the fire is ignited intentionally, and in the other adventitiously, is a

distinction without a difference. Nor is it of any importance that the fire was confined to the limits intended. A grate fire, started by an insured for the purpose of heating a room, which burns a curtain, blown by the wind, and which ignites and consumes the dwelling of the insured, would be a 'friendly' fire intentionally ignited and confined to intended limits. But could it be reasonably said that for the loss caused by such fire no recovery could be had because the loss was not directly caused by fire? The fire in the trash burner was lighted by plaintiff's servant for the purpose of burning trash. Due to the mistake of the servant, or because of her negligence, the bracelet of plaintiff was burned, but the resulting loss is nevertheless the direct result of the fire."
There was a dissent by Leche, J.

We have referred to criticisms of this opinion by courts in other states. Of course, its weakness is the assumption that a curtain ignited by the grate fire would be a "friendly" fire. It stands alone, is unsupported by reason, and in direct conflict with an overwhelming mass of authority. We cannot follow it.

We have also referred to O'Connor v. Queen Insurance Co., 140 Wis. 388, 122 N. W. 1038, 25 L. R. A., N. S., 501; wherein it was held that where a fire was started in a furnace by the use of excessively combustible material not intended for such purpose, the insurer was liable for damages caused by excessive heat, smoke and soot, although there was no secondary fire. The English case of Austin v. Drewe is criticized but there is a devastating dissent by Marshall, J., in which he says, "I do not understand either the facts of this case or the law to be, in all respects, as indicated in the court's opinion." 122 N. W. 1122. He then cites a large number of authorities to sus-

tain his dissent. The author of the annotation in L. R. A., N. S., is equally hostile. We have heretofore referred to criticisms of this case in other jurisdictions. If we give it the broad interpretation contended for, it is certainly out of harmony with both reason and authority.

■ As we view the case, there is nothing ambiguous in the phrase "direct loss by fire" which would require us to construe the contract most strongly against the insurer; we cannot create an ambiguity where none exists. Wallace v. State Farm Mutual Ins. Co., 187 Tenn. 692, 216 S. W. (2d) 697; Brown v. Tennessee Auto Ins. Co., 192 Tenn. 60, 237 S. W. (2d) 553.

■ And we think, as before indicated, that the only conclusion to be drawn from the evidence is that this was a friendly fire which caused the damage in question, or, stated differently, the insurer has carried the burden of proof in showing this was a loss not covered by the contracts in suit, thus meeting the holdings in Freeze v. Continental Cas. Co., 5 Tenn. App. 261 and Livingston v. U. S. Fire Ins. Co., 7 Tenn. App. 230.

Nor can we find anything in California Ins. Co. v. Union Compress Co., 133 U. S. 387, 10 S. Ct. 365, 33 L. Ed. 730, that is contrary to the rule herein announced. The question of friendly and hostile fires was not involved.

The same thing is true of Norwich Union Fire Ins. Soc. v. Board of Commissioners, 5 Cir., 141 F. (2d) 600, 601, which simply holds that the phrase "direct loss or damage by fire" is governed by the doctrine of proximate cause. A fire and explosion damaged a grain elevator and its machinery used for moving the corn stored therein. It required six or seven days to repair the machinery before it could be used to move the corn for airing. During this interim the corn was damaged. It was held the doctrine

of proximate cause was applicable and the insurer was held liable for this item of damage. So it will readily be seen that the issue in the case at bar was not involved therein.

Deeming further citation unnecessary, we have concluded that friendly fires are not within the coverage of the policies involved in this case, and are impelled to reverse and dismiss the action of the insured.

Reversed and dismissed at the cost of the plaintiffs below and surety upon prosecution bond.

McAmis, P. J., and Howard, J., concur.