### SALMON et al. v. CONCORDIA FIRE INS. CO. OF MILWAUKEE.

### No. 16071.

Court of Appeal of Louisiana. Orleans.
May 27, 1935.

John C. Hollingsworth, of New Orleans, for appellant.

Deutsch & Kerrigan & Burke, of New Orleans, for appellees.

WESTERFIELD, Judge.

The plaintiffs, Mr. and Mrs. Clarke Salmon, brought this suit against the Concordia Fire Insurance Company of Milwaukee under two policies of fire insurance, claiming $127.70 as the proportionate loss due by the defendant company (there being other insurance) resulting from the destruction by fire of a bangle bracelet belonging to Mrs. Salmon. The defendant resisted payment upon the ground that the loss was sustained in a manner not covered by the policy.

There was judgment below in favor of plaintiff for $121.46, with legal interest thereon from June 22, 1934, together with 12 per cent. of that amount as damages and $50 as attorney's fees. From this judgment defendant has appealed.

It is admitted that the policies sued on were issued to the plaintiff and that, if there be any liability, the amount awarded by the judgment is correct; the sole contention being that the loss was not within the coverage of the policy. In an agreed statement of facts found in the record it is stipulated that the plaintiff's bangle bracelet "was inadvertently thrown together with certain trash into a trash burner then located in the yard of plaintiff's home and premises described in each of the said policies; that neither of plaintiffs knew that the said bracelet was contained in said trash burner and a fire was voluntarily set to the contents of such trash burner, and the fire so set by plaintiffs and/or their employees at all times during the said fire was contained within the confines designed and intended to contain the flames of a fire intended

to burn trash, debris, waste papers, etc." The policies sued on are of the standard form and, as usual, indemnify the insured "against all direct loss or damage by fire, except as hereinafter provided." There are no exceptions mentioned in the policy which are of interest here. It is said, however, that the fire which consumed the plaintiff's bracelet was a "friendly fire," ignited by the plaintiffs or by their servant intentionally and at all times confined within the limits intended by the plaintiff, and that for the effects of such "friendly fire" there can be no recovery because not within the intendment of the parties to the insurance contract, which only contemplates indemnity for the effects of hostile fires. In support of this proposition the following is quoted from "A treatise on the Law of Fire Insurance," by H. G. Wood (2d Ed.) published in 1886, at page 236, § 103:

"Where fire is employed as an agent, either for the ordinary purposes of heating the building, for the purpose of manufacture, or as an instrument of art, the insurer is not liable for the consequences thereof, so long as the fire itself is confined within the limit of the agencies employed, as, from the effects of smoke or heat evolved thereby, or escaping therefrom, from any cause whether intentional or accidental. In order to bring such consequences within the risk, there must be actual ignition outside of the agencies employed, not purposely caused by the assured, and these, as a consequence of such ignition, dehors the agencies."

And the following from Vance on Insurance (1904) p. 477:

"Hostile and Friendly Fires. In determining the liability of the insurer against damage by fire, it is necessary to make a rather subtle distinction between fires that are hostile and those that are friendly in their origin. So long as a fire burns in a place where it was intended to burn, and ought to be, it is to be regarded as merely an agency for the accomplishment of some purpose, and not as a hostile peril. Thus, a fire burning in a furnace, or a stove, or a lamp, is considered a friendly fire; and damage that may be caused by such fire due to their negligent management, is not considered to be within the terms of the policy. * * *

"The principle underlying these cases is simply that the policy shall not be construed to protect the insured from injury consequent upon his negligent use or management of a fire, so long as it be confined to the place where it ought to be."

Both counsel assert that there are no cases in point in Louisiana and few in other jurisdictions. The industry of able counsel has revealed but three cases where the facts are similar: Weiner v. St. Paul Fire & Marine Ins. Co., 124 Misc. 153, 207 N. Y. S. 279, 280, decided in 1924, affirmed 214 App. Div. 784, 210 N. Y. S. 935, in 1925; Reliance Insurance Co. v. Naman, 118 Tex. 21, 6 S.W.(2d) 743, 745, decided in 1928; and Harter v. Phoenix Insurance Co. of Hartford, 257 Mich. 163, 241 N. W. 196, 197, decided in 1932.

In the first of the cited cases, Weiner v. St. Paul Fire & Marine Ins. Co., the New York Supreme Court held that there could be no recovery for the value of jewelry which the plaintiff's wife had placed in a velvet handbag and deposited in a stove for safe-keeping and which was destroyed when she caused a fire to be ignited in the stove. In that case it was held that: "Unless a fire policy expressly includes such a cause, the parties to the policy cannot be said to have contemplated a loss by flame or heat wholly confined to a stove used by the assured as a stove, where, as here, the property destroyed was placed in the stove, regardless of how or why it was so placed."

In the next cited case, Reliance Ins. Co. v. Naman, the Commission of Appeals of Texas held that plaintiff's wife could not recover the value of jewelry which she had placed in a paper hat box in a clothes closet, together with some tissue paper, and which with the box and paper was thrown into a furnace in the basement by a servant and destroyed by fire lighted by the servant. In that case the court said:

"A friendly fire is not within the undertaking of the insurance company at all. * * * In the sense in which the word 'fire' is used in the policy, there has been no fire so long as it is kept within the proper and accustomed place. In common parlance one has not had 'a fire' so long as it has only burned in the place where it was intended to burn, and the sense in which that word is used in common parlance accurately indicates the sense in which it is employed in a fire insurance policy."

Referring to the argument of counsel that the loss was not one which fell within the exceptions in the policy and was, therefore, within the contract, the court said:

"This by no means follows. In the very nature of an exception it is something taken out of the instrument, whether statute, grant, or contract, and is of a kind dealt with in the contract. Where the matter being considered

is not within the contemplation of the parties to the contract in the first place, there is no need of an exception, and, since as we think the fire in this case was without the contract of insurance, the failure to except it cannot bring it within."

In the last of the cited cases, Harter v. Phoenix Ins. Co. of Hartford, a majority of the Supreme Court of Michigan followed very closely the holding of the Texas court in Reliance Ins. Co. v. Naman, quoting extensively therefrom and citing the Weiner Case. Each of the three cases which we have discussed supports the position of the defendant, and we have been referred to no other cases holding the contrary except that of Countess Fitz-James v. Union Fire Ins. Co., 23 Irish Law Times & Solicitors Jl., Vol. XXIII, p. 168, to which our only access is the following quotation in the minority opinion in Harter v. Phoenix Ins. Co. of Hartford, supra:

"In Countess Fitz-James v. Union Fire Ins. Co., 23 Irish Law Times & Solicitors' Jl. vol. 23, p. 168, the Countess Fitz-James insured against fire in the above company all her furniture and effects, among which were mentioned jewelry and especially a pair of earrings composed of pearls valued at 18,000 francs. During the time the policy was in force one of these earrings, which had been placed on the mantelpiece, was accidentally knocked down and fell into the fire, where it was consumed, notwithstanding every effort made to save the jewel. The insurance company refused to pay for the burnt pearl on the ground there was no conflagration; that the fire which consumed the object was an ordinary fire; that there was no fire; and that the company was not responsible where combustion had only occurred in the ordinary use of a grate for heating purposes. The court, however, rejected this, and ruled that the word 'fire' in matters of assurance applied to every accident, however unimportant such accident may be, so long as it is caused by the action of fire. It was therefore ordered that the Union Company should pay to the Countess Fitz-James the value of the jewel, less that of the gold recovered."

The dissenting opinion in the Harter Case, from which we have quoted, was the basis of the holding of the trial judge in this case, as appears from his reasons for judgment found in the record. We quote the following from that opinion:

"The policy of defendant issued to plaintiffs is general in its terms. It contains no limitations and exceptions applicable to the facts herein. It insures plaintiffs' jewelry without exception against all direct loss and damage by fire. There being no limitations or exceptions in the language of the policy, we can make none. The loss falls directly within the language of the policy. If the defendant would escape liability, it should by appropriate language exclude such liability by the terms of its contract."

With all due respect to the eminent source of the opinions in the New York, Texas, and Michigan cases, we find ourselves in complete disagreement with their holdings. The risk assumed by the defendant insurance company for the consequences of which it agreed to indemnify plaintiff was "all direct loss or damage by fire." It cannot be denied that the destruction of plaintiff's bracelet was caused directly by fire. Whatever may be said of "friendly" or "unfriendly" fires, there is no such distinction recognized in the policy. The fact that the fire in this case was ignited by the insured, or at his instigation by one of his servants, is of no importance because it is not pretended that the bracelet was thrown to the flames by design of the insured. On the contrary, it is admitted that it was inadvertently placed in the trash burner, which means that it was placed there accidentally, or, at most, carelessly or negligently by the insured. In Couch Cyclopedia of Insurance Law, Vol. VI, § 1488, p. 5335, we find the following:

"In fire risks it is one of the objects of insuring to secure indemnity against the consequences of negligence, and, in the absence of a contrary stipulation, if a loss by fire is occasioned by the mere fault, carelessness, or negligence of insured, or his servants or agents, such negligence, carelessness, or want of due care is no defense, unless there is fraud, or design, or gross negligence, or misconduct of such a kind and degree as clearly to evidence a corrupt design or fraudulent purpose on the part of insured, or someone acting with his privity or consent, for the proximate cause of the loss is alone to be considered."

A loss is directly due to fire though it be caused by water (Geisek v. Crescent Mutual Ins. Co., 19 La. Ann. 297), or by explosion (Caballero v. Home Mutual Ins. Co., 15 La. Ann. 217), or by the fall of a building (Ermentrout v. Girard F. & M. Ins. Co., 63 Minn. 305, 65 N. W. 635, 30 L. R. A. 346, 56 Am. St. Rep. 481), or by theft (Fernandez v. Merchants' Mut. Ins. Co., 17 La. Ann. 131), as a result of the fire.

In Showalter v. Mutual Fire Ins. Co. of Chester, 3 Pa. Super. page 448, the court held that a policy of fire insurance "covers all

risks of loss or damage by fire, save only such as are excepted by the terms of the policy and such as are caused by the voluntary act, assent, procurement or design of the insured himself" (syllabus), and that, consequently, where a building was set afire and destroyed by an insane insured, the loss was covered by the policy contract because the insured was incapable of forming a design. The court in its opinion in that case said:

" * * * The parties are presumed to have contracted with reference to the principles of natural justice and well settled law, which forbid a man to avail himself of his own turpitude in a suit, or to contract for indemnity against his own fraud. The contract of fire insurance is a contract of indemnity against loss by fire, and the direct burning of the building by the wilful act of the insured is not one of the risks within the contemplation of the parties to the contract. But it is equally well settled that mere carelessness and negligence of the insured, or his tenants or servants, not amounting to fraud, though the direct cause of the fire are covered by the policy, unless specially excepted. 'Indeed,' says a learned writer, 'one of the principal objects of insuring against fire is to guard against the negligence of servants and others; and therefore, while it may be said generally that no one can recover compensation for an injury which is the result of his own negligence or want of care, the contract of insurance is excepted out of the general rule. Nor does it make any difference whether the negligence is that of the insured himself or of others. The law looks only at the proximate cause of the loss:' May on Insurance, sec. 408 (ed. of 1873)."

We are unable to see the difference between an accidental loss resulting from a "friendly" fire and an accidental loss caused by a hostile fire. In both instances the loss is the direct result of the fire against which the insurer agreed to indemnify the insured. The fact that in one case the fire is ignited intentionally, and in the other adventitiously, is a distinction without a difference. Nor is it of any importance that the fire was confined to the limits intended. A grate fire, started by an insured for the purpose of heating a room, which burns a curtain, blown by the wind, and which ignites and consumes the dwelling of the insured, would be a "friendly" fire intentionally ignited and confined to intended limits. But could it be reasonably said that for the loss caused by such fire no recovery could be had because the loss was not directly caused by fire? The fire in the trash burner was lighted by plaintiff's servant for the pur-

pose of burning trash. Due to the mistake of the servant, or because of her negligence, the bracelet of plaintiff was burned, but the resulting loss is nevertheless the direct result of the fire.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.

LECHE, Judge (dissenting).

The question here is solely one of law. It involves the interpretation of the phrase "all direct loss or damage by fire," as contained in the standard form of fire insurance policy adopted by the Legislature of this state. The agreed statement of facts as set forth in the majority opinion shows that the article of jewelry was inadvertently thrown into a trash burner located in the yard of plaintiff's home and was burned when a fire was started for the purpose of destroying trash contained in the trash burner. At no time did the fire exceed its proper bounds, or attain an unusual or unanticipated intensity. It was confined entirely within its proper limits, and there is absolutely nothing in the record even tending to show that it was anything but one of the most friendly of what the jurisprudence terms "friendly" fires.

This is not a case where the damage occurred outside the proper confines of the fire, and all of those cases involving scorching, smoke, soot, and the like, have no application here. Nor has the question of fault, negligence, or inadvertence on the part of the insured, any place in this case. It is simply a question of whether or not an article destroyed by fire, when inadvertently placed within the proper confines of a friendly fire which is in no way an unusual or extraordinary fire, comes within the meaning and intention of the above-quoted phrase of the standard form of fire insurance policy. Friendly fires sometimes misbehave and cause unfriendly fires, from which liability flows. The fire in this case was completely docile and well behaved. It would serve no purpose to cite hypothetical cases, as each particular case must be considered on its merits. If there is liability here, the terms "friendly fires" and "hostile fires" found so frequently in the jurisprudence are annihilated.

I cannot agree with my colleagues that under the facts of this particular case the damage was the "direct loss or damage by fire," as contemplated by the policy contract, even under the most liberal interpretation, and I, therefore, respectfully dissent.