(No. 6836—February 21, 1941)

THE MODE, LIMITED, a corporation, Appellant, v. FIREMAN'S FUND INSURANCE COMPANY, a corporation; GLENS FALLS INSURANCE COMPANY, a corporation; NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, a corporation; THE MERCHANTS FIRE INSURANCE COMPANY, a corporation; PHILADELPHIA FIRE & MARINE INSURANCE COMPANY, a corporation; QUEEN INSURANCE COMPANY OF AMERICA, a corporation; THE WESTERN ASSURANCE COMPANY, a corporation; ROYALTY INSURANCE COMPANY, LTD., a corporation; THE EUREKA-SECURITY FIRE & MARINE INSURANCE COMPANY, a corporation; THE PHOENIX INSURANCE COMPANY, a corporation; THE LONDON ASSURANCE CORPORATION, a corporation; THE LIVERPPOL AND LONDON AND GLOBE INSURANCE COMPAY, LIMITED, a corporation; ATLAS ASSURANCE COMPANY, LTD., a corporation; NORWICH UNION FIRE INSURANCE SOCIETY, LIMITED, a corporation; NORTH BRITISH AND MERCANTILE INSURANCE COMPANY, LIMITED, a corporation; SPRINGFIELD FIRE & MARINE INSURANCE COMPANY, a corporation; NEWARK FIRE INSURANCE COMPANY, a corporation; HOME FIRE & MARINE INSURANCE COMPANY OF CALIFORNIA, a corporation; GENERAL INSURANCE COMPANY OF AMERICA, a corporation; NIAGARA FIRE INSURANCE COMPANY, a corporation; NORTHWESTERN MUTUAL FIRE ASSOCIATION, a mutual fire insurance company, Respondents.

(110 Pac. (2d) 840)

Hawley & Hawley for appellant.

Willis C. Moffatt and Carroll F. Zapp for respondents.

BUDGE, C. J.—This appeal is from a judgment rendered after respondent's general demurrer to appellant's complaint was sustained and appellant refused to plead further.

Appellant sought recovery upon policies of fire insurance issued by respondents, in the proportion that the face of the policy of each respondent bore to an entire loss sustained by appellant by reason of the destruction by burning of a quantity of antique jewelry in an incinerator.

The facts relative to the destruction of the jewelry and essential in the determination of the questions involved are set forth in appellant's complaint as follows:

"That the said antique jewelry was contained in a package which, . . . was inadvertently placed on a floor of the plaintiff's place of business, . . . shortly before the close of business . . . on the 28th day of November, 1939; that it was the regular and usual duty of an employee of the plaintiff, after the close of business, to sweep and clean the floors and premises of the plaintiff and to remove all debris, sweepings and trash to an incinerator in the basement of the plaintiff's place of business and there burn and destroy it; that in the regular performance of his duties the said employee did, during the night of November 28, and the early morning of November 29, 1939, sweep the floors, and without any knowledge whatever that the package containing the said jewelry was

anything other than the usual waste accumulating on said floor in said department, did sweep the same with the refuse and debris on said floors and deposited the same in the said incinerator; that he thereupon following his usual duties, did build a fire in said incinerator and burned the trash; that the said employee and none of the plaintiff's employees, nor the plaintiff, had any knowledge whatsoever that the said jewelry had been so placed in the incinerator, and it was totally and completely destroyed by fire therein; that the fire was confined to the incinerator and that the purpose of the incinerator was to cheaply and for purposes of sanitation destroy the debris, dust, sweepings and trash daily accumulated in the plaintiff's place of business; that neither the plaintiff nor none of its employees intended to destroy the said jewelry, and its destruction was effected totally in ignorance of the fact that it was in said incinerator or destroyed therein until the 29th day of November, when the Gift Department Manager of the plaintiff discovered that the package was missing, and upon tracing its whereabouts the remains of the jewelry were discovered in the incinerator;

## "XXXI

"That the said jewelry was totally and wholly destroyed by fire in the said incinerator; . . . that the said jewelry was part of the property covered by and included in each of the policies and contracts of insurance hereinbefore referred to . . . "

The policies of the insurance sued upon contain the following provision relative to the coverage:

"In consideration of the stipulation herein named and of _____ Dollars premium does insure_____ for the term of _____ from the _____ day of _____, 19_____, at noon, against ALL DIRECT

LOSS OR DAMAGE BY FIRE. . . "

The only question presented is whether the words "ALL DIRECT LOSS OR DAMAGE BY FIRE" protect appellant under the facts alleged in its complaint and admitted by the general demurrer. In other words, what did the parties intend by the word "fire" as used in the policies in question?

Appellant relies in the main upon *Salmon v. Concordia Fire Ins. Co. of Milwaukee,* (La.) 161 So. 340, and the reasoning therein, coupled with the doctrine of construction that a clause in an insurance policy is to be construed most strongly against the insurer, or liberally in favor of the insured.[1] Conceding such rule of construction prevails, nevertheless courts in states recognizing such rule (26 C. J. 72, sec. 70, note 19 and cases there cited), have uniformly distingished between "friendly" and "hostile fires" as bearing on the meaning of the words "loss by fire."

The word "fire" as used in fire insurance policies in common parlance has a well understood meaning of a "hostile fire." In *Watson v. American Col. Ins. Co.,* (S.C.) 183 S. E. 692, the court emphasises such fact in the following language:

"In common parlance one has not had 'a fire' so long as it has only burned in the place where it was intended to burn, and the sense in which that word is used in common parlance accurately indicates the sense in which it is employed in a fire insurance policy."

In *Reliance Insurance Co., v. Naman* (Tex.) 6 S. W. (2d) 743, a situation almost identical in point of fact with that herein, it was held:

"Where a servant of the assured under a policy of insurance inadvertently placed jewelry in a furnace fire for heating the residence of the assured, and said jewelry was destroyed or damaged by fire wholly confined to such furnace, such damage was due to a friendly fire, for which the insurance company is not liable. . . . Where the fire which occasioned the damage is confined to the usual and ordinary place, such as . . . furnace, it is usually denominated a friendly fire, and as such not a fugitive one within the contemplation of the contract of insurance. . . . In the sense in which the word 'fire' is used in the policy, there has been no fire so long as it is kept within the proper

---

[1] *Maryland Cas. Co. v. Boise Street Car Co.,* 52 Idaho 133, 11 P (2d) 1090; *Sweany & Smith Co. v. St. Paul Ins. Co.,* 35 Idaho 903, 206 P. 178; *Sant v. Continental Life Ins. Co.,* 49 Ida. 691, 291 P. 1072.

and accustomed place. In common parlance one has not had 'a fire' so long as it has only burned in the place where it was intended to burn, and the sense in which that word is used in common parlance accurately indicates the sense in which it is employed in a fire insurance policy."

In *Harter v. Phoenix Insurance Company* (Mich.) 241 N. W. 196, the court held:

"A loss of articles placed, either inadvertently or purposely, in a friendly fire, is not compensable under a policy against loss by fire, and it was unnecessary to word the policy so as to cover such contingency."

The principles are announced in 26 C. J. 340, et seq as follows:

"It must be a hostile fire, that is one which becomes uncontrollable or breaks out from where it was intended to be and becomes a hostile element. . . . Where the fire is a friendly one, that is one which is employed for the ordinary purpose of lighting, heating, or manufacturing and is confined within its usual limits, as in the case of a blaze produced by lighting a match or gas jet or lamp, it is not a fire within the usual terms of the policy and recovery cannot be had for loss or damage caused thereby."

14 R.C.L. page 1216, sec. 396, announces the following:

"The word 'fire' as used in a fire insurance policy, has its common or usual meaning and usually the question whether there has been a fire is easy of solution. A distinction is usually drawn by the courts between a friendly and a hostile fire, and it is held that if fire is employed as an agent, either for the ordinary purposes of heating the insured building, for the purpose of manufacture, or as an instrument of art, the insurer is not liable for the consequences thereof, so long as the fire itself is confined within the limits of the agencies employed."

For further cases distinguishing between "friendly" and "hostile fires" as bearing on the meaning of the words "loss by fire" see the following: *Weiner v. St. Paul F. & M. Ins. Co.*, 207 N.Y.S. 279, affirmed in 210 N.Y.S. 935, 29 Am. Jur. 767, sec. 1016; *Progress Laundry & C. Co., v. Reciprocal Exchange,* (Tex.) 109 S. W. (2d) 227; *Cannon v. Phoenix Ins. Co.* (Ga.) 35 S. E. 775; *Fire Ass'n of Philadelphia v. Nelson,* (Colo.) 10 P. (2d) 943; *Fog-*

*arty v. Fidelity & Gas Co.* (Conn.) 188 A. 481; *City of N. Y. Ins. Co. v. Gugenheim,* (Tex.) 7 S. W. (2d) 588; *Swerling v. Conn. Fire Ins. Co.* (R. I.) 180 A. 343; *O'Connor v. Queen Ins. Co.,* (Wis.) 122 N. W. 1038, 133 A. S. R. 1081, 17 Am. Cas. 1118; *Bilsky v. Sun Ins. Office etc.* (Mo.) 84 S. W. (2d) 171; *Hartford Fire Ins. Co. v. Armstrong,* (Ala.) 122 So. 23; *German American Ins. Co. v. Hyman* (Colo.) 96 P. 27; *Metropolitan Cas. Co. v. Bergheim,* (Colo.) 122 P. 812; *Lavitt v. Hartford Co. M. F. Ins. Co.,* (Conn.) 136 A. 572; *Hansen v. Le Mars M. Ins. Asso.,* (Ia.) 186 N. W. 468, 20 A. L. R. 964; *Sigourney Produce Co. v. Milwaukee M. Ins. Co.,* (Ia.) 235 N. W. 284; *McGraw v. Home Ins. Co.,* (Kan.) 144 P. 821; *Ann. Cas.* 1916D 227; *New Hampshire Fire Ins. Co. v. Ruppard,* (Ky.) 220 N. E. 535; *American Towing Co. v. German Fire Ins. Co.,* (Md.) 21 A. 533; *Scripture v. Lowell M. F. Ins. Co.,* (Mass.) 10 Cush. 356, 57 Am. Dec. 111; *Cole v. N. S. F. Ins. Co.,* (Mich.) 251 N. W. 400; *Way v. Abington Mutual F. Ins. Co.* (Mass.) 166 Miss. 67, 32 L. R. 608; *Cabell v. Milwaukee M. Ins. Co.* (Mo.) 260 S. W. 490; *McDonald v. Royal Ins. Co.* (Mont.) 40 P. (2d) 1005; *Coryell v. Old Colony Ins. Co.* (Neb.) 229 N. W. 326, 68 A. L. R. 222, 224 N. W. 684, 68 A. L. R. 227; *Davis v. Law Union & Rock Ins. Co.,* 1 N. Y. S. (2d) 344; *Washington T. P. M. F. & L. Ins. Asso. v. Sherrer,* (Ohio) 168 N. E. 234; *United L. F. & M. Ins. Co. v. Foote,* (Ohio) 22 Ohio St. 340, 10 Am. Rep. 735; *Tannebaum v. Conn Fire Ins. Co.* (Pa.) 193 A. 305; *Solomon v. U. S. F. Ins. Co.* (R. I.) 165 A. 214, 166 A. 254; *Mitchell v. Potomac Ins. Co.* 183 U. S. 42, 46 L. Ed. 74, 22 Sup. Ct. Rep. 22; *Pappadakis v. Netherlands F. & L. Ins. Co.* 137 Wash. 430, 49 A. L. R. 402; 92 P. 641; *Couch Cyc of Ins. Law,* Vol. 5, sec. 1201, p. 43.

The meaning of the term "loss by fire" as being a "hostile" and not a "friendly fire" has been so extensively and long recognized that reasonably we must consider, even under liberal interpretation that both insured and insurer contracted with such definition in mind, determinative of what losses were covered.

From the allegations of the complaint it appears the fire in the incinerator in which the antique jewelry was accidentally placed was intentionally set, at no time

escaped from its usual or intended limits, was at all times under control and was such a fire as was customarily used for the purpose of burning waste and debris gathered up and deposited in the incinerator by employees of appellant. It was a friendly fire as defined by the courts generally, and the loss or damage sustained by appellant was not "direct loss or damage by fire" as the ordinary usage and intended meaning of the words denote when placed within the terms of an insurance policy. The court was correct in holding, by sustaining respondent's demurrer, that the loss in question was not by fire within the contemplation of the policies.

The judgment is affirmed. Costs awarded to respondents.

GIVENS and AILSHIE, J.J. concur.

MORGAN, J., dissenting—The question to be decided is as to what interpretation shall be placed on the phrase, "does insure * * * against ALL DIRECT LOSS OR DAM-AGE BY FIRE," found in the policies sued on.

In 1913, the legislature enacted what is now I. C. A., § 40-1401. It provides:

"No fire insurance company, except county mutuals, shall issue any fire insurance policy covering on property or interest therein in this state, other than on the form known as the New York standard, as now or may be hereafter constituted, except as follows:"

Then follows nine sub-sections expressly permitting certain provisions to be placed in fire insurance policies.

In 1916, this court had under consideration the 1913 legislative enactment above quoted, in *Carroll v. Hartford Fire Ins. Co.*, 28 Ida. 466, 478, 154 Pac. 985, 988, and said:

"However, we do not believe it was the intention of our legislature in seeking to enforce a standard form of policy in this state, to withdraw from the insured any protection theretofore afforded them under the law of contracts, or to confer upon insurance companies any immunity for the carelessness or negligence of their agents which they had not before enjoyed. Sec. 18 of art. 3 of our constitution prohibits the amendment of existing laws of this state by

reference to their title, and commands that such sections as are amended be set forth at length in the new statute, and in view of this constitutional provision it would seem somewhat anomalous if the legislature could nevertheless adopt the law of another state by reference, not to its title even, but to something still more indefinite, namely, 'the New York standard, as now or may be hereafter constituted.'

"From these considerations we conclude that the plaintiffs in this case cannot be held to have had the constructive notice of the contents of their policy which appellant seeks to fasten upon them under the law in question, and that their contractual rights were in no way abridged by the 1913 statute."

The question before us is in no way affected by what may, or may not, be found in "the form known as the New York standard."

As has been pointed out in the foregoing opinion, the word "fire," has been held by many courts to mean an uncontrolled, or a hostile, fire. If that was what the authors of the policies sued on in this case intended the word "fire" to mean, there is nothing in the law of Idaho which would have prevented them from expressing it that way.

These policies were prepared by the companies which issued them, and the insured had nothing to do with their preparation. They insured appellant against "ALL DIRECT LOSS OR DAMAGE BY FIRE," not against all direct loss or damage by *uncontrolled,* or *hostile,* fire. Respondents issued to appellent these policies, wherein they agreed to indemnify it against loss or damage by fire, and wherein they employed no word limiting the meaning of "fire." Words should not be read into the policies, after a loss has occurred, which will cause the word "fire" to mean "uncontrolled, or hostile, fire."

That is what the majority opinion does to these policies, and, in doing it, violates a rule, well established in Idaho, that contracts of insurance are to be construed in view of their general objects and strict, technical interpretation is to be avoided. Where language may be given two meanings, one of which permits recovery and

the other does not, it is to be given the construction most favorable to the insured.

In *Sweaney & Smith Co. v. St. Paul Ins. Co.*, 35 Ida. 303, 315, 206 Pac. 178, 182, we said:

"It has been almost universally held that insurance policies will be strictly construed against the insurer, and liberally construed in favor of the insured. (*Stebbins v. Westchester Fire Ins. Co.*, 115 Wash. 623, 197 Pac. 913.)"

We further said:

"and a clause in an insurance policy being susceptible of more than one construction, the one most favorable to the insured will be adopted. (*National Mut. Fire Ins. Co. v. Duncan*, 44 Colo. 472, 98 Pac. 634, 20 L.R.A., N.S., 340.) Contracts of insurance should be considered in view of their general objects and the conditions prescribed by the insurers, rather than on the basis of a strict technical interpretation. (*Raulet v. Northwestern Nat. Ins. Co. of Milwaukee*, 157 Cal. 213, 107 Pac. 292.)"

We have consistently followed this rule. (*Sant v. Continental Ins. Co.*, 49 Ida. 691, 696, 291 Pac. 1072, 1074; *Maryland Cas. Co. v. Boise Street Car Co.*, 52 Ida. 133, 140, 11 Pac. (2d) 1090, 1093; *Watkins v. Federal Life Ins. Co.*, 54 Ida. 174, 176, 29 Pac. (2d) 1007, 1008; *Kingsford v. Business Men's Assur. Co.*, 57 Ida. 727, 733, 68 Pac. (2d) 58, 60; *Rauert v. Loyal Protective Ins. Co.*, 61 Ida. 677, 686, 106 Pac. (2d) 1015, 1018.)

No reason appears for departing from this rule of interpretation, the tendency of which is to promote fair dealing between the insurer and the insured, and I am opposed to doing so.

HOLDEN, J., concurs in this dissenting opinion.