No. 38,467

C. E. Youse, *Appellee*, v. The Employers Fire Insurance Company, Boston, Massachusetts, *Appellant*.

(238 P. 2d 472)

Opinion filed December 8, 1951.

P. B. McAnany, of Kansas City, argued the cause, and Edwin S. McAnany,

*Thos. M. Van Cleave, Willard L. Phillips* and *Thos. M. Van Cleave, Jr.,* all of Kansas City, were with him on the briefs for the appellant.

*Blake A. Williamson,* of Kansas City, argued the cause, and *James K. Cubbison* and *Lee Vaughan,* both of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to recover for the loss and damage to a star sapphire ring caused by fire. Plaintiff insured prevailed in the court below and defendant company has appealed.

For convenience, the parties will be referred to as the insured and the company.

Both parties state the sole question for determination to be:

"Is the loss resulting from damage to jewelry, by a fire intentionally kindled in and confined to a place where fire was intended to be, insured against under the terms of the fire insurance policy in question?"

The facts, which are not in dispute, are as follows:

On an occasion while the policy in question was in force the wife of insured was carrying her ring wrapped in a handkerchief in her purse. Upon arriving at her home she placed the handkerchief, together with some paper cleansing tissues (Kleenex), on the dresser in her bedroom. Later her maid, in cleaning the room, inadvertently picked up the handkerchief containing the ring, together with the cleansing tissues, and threw them into a wastebasket. Still later, another servant emptied the contents of the wastebasket, along with other trash, into a trash burner at the rear of the premises and proceeded to burn the trash so deposited. The trash burner was intended for that purpose, the fire was intentionally lighted by the servant, and was confined to the trash burner. About a week later the ring was found in the trash burner. It had been damaged to the extent of $900.

The policy, a standard form, insured household goods and personal property, usual or incidental to the occupancy of the premises as a dwelling, belonging to insured or a member of his family while contained on the premises,

". . . against all direct loss or damage by fire, except as hereinafter provided, . . ."

in an amount not exceeding $2,000. The parties agree that the "exceptions" contained in the policy are immaterial to the issues in this case.

The insured also carried a "floater policy" in another company

(not a party to this action) by the terms of which the ring was insured to the extent of $250. The company issuing the "floater policy" offered to pay that amount to insured, but as of the time of trial of this action such offer had not been accepted.

In the court below the company offered no evidence and elected to stand on its demurrer to insured's evidence, which established the facts as hereinbefore related. Judgment was rendered in favor of insured in the amount of $650 (being the amount of the loss less the "floater policy" coverage), and for attorney fees in the amount of $300, to be collected as costs.

The company brings the case here, specifying as error the orders of the lower court in overruling its demurrer to the evidence and in entering the judgment in favor of insured.

The company contends here, as it did in the court below, that the quoted insuring clause of the policy,

"against all direct loss or damage by fire"

covers only loss or damage resulting from a "hostile" fire as distinguished from a "friendly" fire; that here, the fire being intentionally lighted in and confined to a place or receptacle where it was intended to be, was not a hostile fire within the usual and well-established meaning of the term and therefore no recovery can be had.

The insured argues that he purchased and paid for *fire insurance* —not just for fire insurance to cover loss resulting only from so-called "hostile" fires; that the direct loss and damage to the ring by fire is undisputed; that the company would have the court write into the policy an unauthorized and unreasonable restriction; that there is no ambiguity in the terms of the policy and therefore it should be enforced according to its literal terms; and that even though there were some uncertainty as to its meaning the court is bound to construe the policy strictly against the company and favorably to the insured. (*Knouse v. Equitable Life Ins. Co.,* 163 Kan. 213, 181 P. 2d 310; *Braly v. Commercial Casualty Ins. Co.,* 170 Kan. 531, 227 P. 2d 571.)

Although courts of other jurisdictions and text writers on the subject have had occasion to distinguish between so-called "friendly" and "hostile" fires in connection with loss or damage due to fire, it appears that the precise question before us is one of first impression in this state.

In 29 Am. Jur., Insurance, § 1016, pp. 767, 768, it is said:

"A distinction is usually drawn by the courts between a friendly and a hostile fire, and it is held that if fire is employed as an agent, for the ordinary purposes of heating the insured building, for the purposes of manufacture, or as an instrument of art, the insurer is not liable for the consequences thereof, so long as the fire itself is confined within the limits of the agencies employed." (See also text and notes under same section number in 1951 Cumulative Supplement.)

In 45 C. J. S., Insurance, § 809, pp. 861, 862, the rule is stated:

"Recovery usually may be had for loss or damage of whatever character, which proximately resulted from an actual hostile fire. The liability of an insurance company under a policy of fire insurance ordinarily is measured by the terms of the policy. Although it has been held that an insurance against loss or damage by fire is broad enough to include all fires, however originating, and all damages therefrom of whatever character, as a general rule, to constitute a 'direct loss or damage by fire,' within the usual terms of a policy, there must be an actual fire in the proper sense of that term, from which the loss or damage results, . . .

"While there seems to be authority to the contrary, it must be a hostile fire, that is, one which becomes uncontrollable or breaks out from where it was intended to be, and becomes a hostile element, . . .

"Where the fire is a friendly one, . . . it is not a fire within the usual terms of a policy, and recovery cannot be had for loss or damage caused thereby, . . ." (See also 26 C. J., Fire Insurance, §§ 429, 430, pp. 340, 341.)

The following general rule is found in Couch on Insurance, vol. 5, § 1201:

"The questions of what constitutes a loss by fire, and what is fire, have given rise in numerous cases to exhaustive discussions, . . . What is 'fire' is a question not clearly settled so as to be applicable to all cases. . . . It should be given that construction which conforms to the popular, ordinary sense in which it is used. . . . One test which runs through a great many cases is whether the fire is a 'hostile,' or a 'friendly,' one, the general rule being that fire policies extend protection only against loss from 'hostile' fires and do not cover loss from so-called 'friendly' fires, such as those usually employed for economic or scientific purposes, as light, heat, etc.; in fact, that to constitute a 'hostile' fire, it must be one which becomes uncontrollable, or breaks out from where it was intended to be so as to become a hostile element, as distinguished from a friendly one, such as is employed for ordinary purposes, and is confined within its usual limits."

To the same effect see Appleman, Insurance Law and Practice, vol. 5, § 3082, where it is stated:

"The distinction most commonly made by courts in considering contracts of fire insurance is that drawn between 'hostile' and 'friendly' fires. If the fire burns in a place where it (is) intended to burn, although damages may have resulted where none were intended, the fire is a friendly fire, and the insurer is not liable for damages flowing therefrom. A friendly fire refers to one which remains confined within the place intended, and refers to a fire in a furnace, stove, or other usual place. A hostile fire, on the other hand, means one not

confined to the place intended, or one not intentionally started; and it is generally considered to refer to such a fire which, if it had pursued its natural course, would have resulted in a total or partial destruction of the insured property. When a friendly fire escapes from the place it ought to be to some place where it ought not to be, causing damage, it becomes a hostile fire for which the insurer is liable.

"In order to recover for damages sustained, the insured must show that the fire was a hostile, rather than a friendly, fire. . . .

"The majority of courts have denied recovery for loss or damage to jewelry owned by the insured where such articles have been placed for safekeeping in a stove or thrown inadvertently into a furnace. The reason is, of course, that such a fire is considered a friendly fire, confined to its place of inception, and the primary cause of loss is the negligence of the insured or his servants. Louisiana alone seems to permit recovery in such instance."

An examination of the decisions discloses that the question whether a fire is "friendly" as distinguished from "hostile" has arisen under a great variety of circumstances, such as where damage resulted from smoke, soot, scorching, or overheating, where property was actually consumed or damaged by flame itself, and in those instances where fire, originally confined to a place normally intended for it to be, escaped from such place, thereby taking on the characteristics of a "hostile" fire.

The case of *McGraw v. Insurance Co.*, 93 Kan. 482, 144 Pac. 821, Ann. Cas. 1916 D, 227, appears to be the only decision of this court mentioning the subject of friendly and hostile fires. In that case a steam boiler was damaged by the application of fire which was excessive in view of an insufficient supply of water in the boiler. While the decision turned on a question of sufficiency of proof concerning whether the damage was the result of negligence, or the willfulness on the part of some other person, the court cited with approval the early English case of *Austin v. Drew*, 4 Camp. 360 (1815). There an employee in a sugar factory neglected to open a register and as a result a quantity of sugar was damaged by being overheated. The insurance company was held not to be liable, the decision being based upon the proposition there was no fire except in the stove and the flue, as there should have been, and that it was never excessive and was always confined within its proper limits. The McGraw case, *supra*, has been cited with approval by courts of a number of other jurisdictions.

In our discussion of the distinction between so-called "friendly" and "hostile" fires we will attempt to confine ourselves to the facts here present and to analogous instances.

In the case of *Mode, Limited v. Fireman's Fund Ins. Co.*, 62 Idaho 270, 110 P. 2d 840, reported in full at 133 A. L. R. 791, it was held there could be no recovery under a policy insuring against "all direct loss or damage by fire" where a package containing antique jewelry which belonged to the insured was accidentally placed in an incinerator and destroyed by a fire which was intentionally built and confined to such place. The decision was based upon the fact the fire at all times was under control and was such as was customarily employed for the purpose of burning waste and debris gathered up and deposited in the incinerator by the employees of insured; that it was a friendly fire as distinguished from a hostile fire, and that the damage sustained was not "direct loss or damage by fire" within the ordinary meaning of the words when used in the terms of a fire insurance policy.

In *Reliance Ins. Co. v. Naman*, 118 Tex. 21, 6 S. W. (2d) 743, a servant of insured, without knowledge of its contents, threw a box containing jewelry into a furnace fire. The policy in question insured "against all direct loss or damage by fire." Recovery was denied on the ground that a friendly fire was not within the undertaking of the insurance company, and that in the sense in which the word "fire" was used in the policy there had been no fire so long as it was kept within the proper and accustomed place. The holding in this case was followed by the Supreme Court of Michigan, in *Harter v. Phoenix Ins. Co. of Hartford, Conn.*, 257 Mich. 163, 241 N. W. 196. In that case the insured's household servant picked up an envelope containing two rings from a desk, and, not realizing the envelope contained rings, put it in a wastebasket and later put the contents of the wastebasket, including the rings, in the furnace where, when a fire was built, they were seriously damaged. The court held the fire to be a friendly fire and denied recovery.

To the same effect see *Weiner v. St. Paul F. & M. Ins. Co.* (1924) 124 Misc. 153, 207 N.Y.S. 279 (affirmed without opinion in (1925) 214 App. Div. 784, 210 N.Y.S. 935) and the annotation following the Mode case, *supra*, at 133 A. L. R. 797.

From the foregoing authorities, as well as from numerous others which we have examined, the very great weight of authority appears to be that "fires," within the meaning of standard insuring clauses in fire insurance policies, are classified as friendly or hostile in nature, notwithstanding that such distinction is not made in the language of the policy itself.

A friendly fire is defined as being a fire lighted and contained in a usual place for fire, such as a furnace, stove, incinerator, and the like, and used for the purposes of heating, cooking, manufacturing, or other common and usual everyday purposes.

A hostile fire is defined as being a fire unexpected, unintended, not anticipated, in a place not intended for it to be and where fire is not ordinarily maintained, or as one which has escaped in the usual and ordinary sense of the word. A fire originally friendly, by escaping, becomes hostile, and ordinarily recovery may be had for loss or damage resulting thereby.

The rule is well stated in *Progress Laundry & C. Co. v. Reciprocal Exchange* (Tex.), 109 S. W. 2d 226:

"In determining the liability of the insurers for the damage sustained, we deem it advisable to note the distinction between fires that are hostile and those that are friendly. We think the overwhelming weight of authorities is that, so long as a fire burns in a place where it was intended to burn and ought to be, it is to be regarded as an agency for the accomplishment of some intended purpose, although damages may have resulted where none were intended, thus such fire is a 'friendly fire' and insurers are not liable for damages flowing therefrom; but, where a friendly fire escapes from the place where it ought to be to some place where it ought not to be, resulting in damages, such fire becomes a hostile peril for which the insurers are liable."

Words employed in contracts of insurance are to be construed according to the meaning of the terms used, and are to be taken and understood in their plain, ordinary and peculiar sense, so as to give effect to the intention of the parties. (*Spence v. New York Life Ins. Co.*, 154 Kan. 379, 118 P. 2d 514, 137 A. L. R. 753.) (See also G. S. 1949, 77-201, second, relating to statutory construction which, among other things, provides that such words and phrases as may have acquired a peculiar and appropriate meaning in law shall be construed according to such peculiar and appropriate meaning.) In applying the rule the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood them to mean. (*Braly v. Commercial Casualty Ins. Co.*, supra.)

We think it cannot be denied that in common parlance and everyday usage one has not "had a fire" so long as it has burned only in the place where it was intended to burn, and where fire ordinarily is maintained. By way of illustration, when a person maintains a fire in his furnace, cookstove or fireplace, or when he burns trash in his incinerator, he has not "had a fire" in the ordinary, common ac-

ceptation of the term. On the other hand, if a fire on the roof results from sparks from fire in the furnace, cookstove or fireplace, if sparks from the latter should burn a rug or furniture, or if the fire in the trash burner escapes therefrom and sets fire to the garage or fence, such person has "had a fire" for which recovery can be had, notwithstanding the fire was originally friendly.

We think it is quite true to say that when one purchases standard fire insurance he does so with the idea in mind of protecting himself from loss or damage resulting from what the law defines as a "hostile" fire, and that the word "fire," as used in fire insurance policies, has, in common parlance, such well-understood meaning. In the Mode case, *supra*, it was stated:

"The meaning of the term 'loss by fire' as being a 'hostile' and not a 'friendly' fire' has been so extensively and long recognized that reasonably we must consider, even under liberal interpretation that both insured and insurer contracted with such definition in mind, determinative of what losses were covered." (P. 277.)

We are not unmindful of *Salmon v. Concordia Fire Ins. Co. of Milwaukee* (La. App.), 161 So. 340, from which insured quotes at length and in which recovery was allowed for the destruction of jewelry under circumstances similar to the case before us. There the court refused to draw a distinction between an accidental loss from a "friendly" fire and an accidental loss caused by a "hostile" fire, and held that in both instances the loss would be a direct result of fire against which the insurer agreed to idemnify the insured. With all due respect to the Louisiana court, we are convinced the decision is not in harmony with the general weight of authority, which fact is borne out in the quotation from Appleman, Insurance Law and Practice, *supra*.

In our opinion there can be no question but that the fire which damaged or destroyed the sapphire ring was what in law is known as a "friendly" fire. It was intentionally lighted, was for the usual and ordinary purpose of burning trash, and was at all times confined to the place where it was intended, and did not escape.

We are not concerned here with the provisions of a "floater policy," and neither are we concerned with the question of the negligence or inadvertence of insured's servant in throwing the ring into the trash burner, which latter fact, according to insured's argument, made the fire a "hostile" fire so far as insured is concerned. Negligence or inadvertence of an insured or of one of his employees of course ordinarily would not bar recovery—*provided* the fire

causing the loss or damage is what is known in law as a *hostile* fire. True, here the loss was occasioned by fire—but, it was a *friendly* fire, and under such circumstances no recovery may be had.

It follows that the court erred in overruling the demurrer to the evidence and in rendering judgment in favor of insured. The judgment of the lower court is therefore reversed.

SMITH and PARKER, JJ., dissent.