OWENS *v.* MILWAUKEE INSURANCE COMPANY OF MILWAUKEE, WIS.

[No. 18,570. Filed January 24, 1955.]

*Albert F. Owens,* of Terre Haute, for appellant.

*Crawford & Crawford,* of Terre Haute, for appellee.

CRUMPACKER, J. — The appellant commenced this action against the appellee in the Vigo Circuit Court where a demurrer to her complaint was sustained. She refused to plead over, judgment went against her and she appeals challenging the propriety of the court's ruling on said demurrer. No other question is involved.

The complaint alleges that on the 25th day of June, 1951, the appellee, for a valuable consideration, issued a policy of insurance to the appellant whereby it insured her for a period of three years against all direct loss by fire to household and personal property used or incidental to her occupancy, as a dwelling, of the premises known as 1106 Fruitridge Ave., Terre Haute,

Indiana. That on the 20th day of November, 1952, while said policy of insurance was in full force and effect, certain personal property belonging to her, to-wit, one lower partial denture was destroyed as the result of being inadvertently thrown into a trash fire on said premises.

The demurrer is for want of facts and charges that the complaint is fatally defective because it fails to allege either (1) that said trash fire was accidental in origin, or (2) that said trash fire escaped its normal confines and thereby reached and destroyed the plaintiff's said property.

The defendant argues, in support of its demurrer, that where a fire is intentionally kindled for a lawful purpose the insurer is not liable for the consequence thereof so long as the fire itself is confined as intended. That this is what the courts have called a "friendly" fire and any loss that occurs as the direct result of a "friendly" fire is not covered by the risk assumed. That it is only where such a fire escapes from its intended confines and becomes a "hostile" fire that any loss occasioned by it becomes compensable.

On the other hand the appellant contends, in support of her complaint, that the risk assumed by the appellee covers "all direct loss or damage by fire." That the complaint alleges her loss was caused directly by fire and that the policy, a copy of which is made a part of the complaint, makes no distinction between so-called "friendly" and "hostile" fires. That there is no difference between an accidental loss caused by a "friendly" fire and that caused by a "hostile" fire as in both instances the loss is the direct result of fire against which the appellee agreed to insure her. That the appellee wrote the insurance contract involved and

did not see fit to exclude losses caused by "friendly" fires, and it is the law of this state that the insurance contract involved should be liberally construed in her favor to the effect that the phrase "all direct loss or damage by fire" includes "friendly" as well as "hostile" fires.

We find no case in Indiana classifying fires as "friendly" or "hostile," nor one in which the facts are at all similar to those alleged in the complaint before us. We therefore believe the present question to be one of first impression and that it ought to be decided in harmony with the weight of authority elsewhere. While there is some logic and justice in the appellant's position, the courts of only two states in the Union support her. In *Salmon* v. *Concordia Fire Ins. Co. of Milwaukee* (1935), La. Ct. of App., 161 So. 340, the facts are strikingly similar to those at bar. The appellants inadvertently threw a bracelet into a trash burner where fire restricted to normal confines consumed it. The Louisiana court repudiated the "friendly" fire doctrine and held the loss to be covered by the insurance policy involved. In a Wisconsin case a fire was built in a furnace with highly inflammable material not intended for such use. While the fire did not escape from its normal confines, it became so intense that great volumes of smoke and heat poured through the warm air registers into the appellant's living quarters doing great damage to furniture and drapes. The court held that no limitation was placed on the word "fire" by the policy involved and, construing it strictly against the appellee who wrote it, held the loss to be covered by its terms. *O'Conner* v. *Queen Ins. Co.* (1909), 140 Wis. 388, 122 N. W. 1038.

The overwhelming weight of authority, however, supports the appellee's contention in the case at bar.

As early as 1815 the English courts in the case of *Austin* v. *Drew* (1815), 171 Eng. Repr. 115, Affirmed 6 Taunt 436, 2 Marshall 130, announced the doctrine that a fire wholly confined to the place where it is intended to be is not a fire within the meaning of a fire insurance policy and damages resulting therefrom are not covered by the contract, but if it escapes its intended place and burns outside its normal confines it becomes a fire within the meaning of the policy and any loss occasioned thereby is compensable. This doctrine has been consistently followed by the courts of most of our states which have had occasion to pass upon the question, as indicated by the decision in *Mode, Ltd.* v. *F. F. Ins. Co.* (1941), 62 Idaho 270, 110 P. 2d 840, and the multitude of cases cited therein.

The whole question seems to be summed up in the following quotation from the Mode case: "The meaning of the term 'loss by fire' as being a 'hostile' and not a 'friendly fire' has been so extensively and long recognized that reasonably we must consider, even under liberal interpretation, that both insured and the insurer contracted with such definition in mind, as determative of what losses are covered."

Judgment affirmed.

NOTE.—Reported in 123 N. E. 2d 645.