FRINGS, APPELLEE, *v.* FARM BUREAU MUTUAL FIRE INS. CO., APPELLANT.

(No. 496—Decided February 28, 1955.)

*Messrs. Faust & Harrelson,* for appellee.
*Messrs. Shipman & Shipman,* for appellant.

WISEMAN, J. This is an appeal on questions of law from a judgment rendered for the plaintiff by the Common Pleas Court of Miami County.

The petition consists of two causes of action arising out of damage to the residence of the plaintiff caused by a fire. Plaintiff alleges that the damages sought to be recovered in both causes of action were covered by the insurance policy issued by the defendant company.

In the first cause of action plaintiff asks for damages caused to the dwelling house by reason of the fire. Defendant confessed

judgment for the amount claimed in the first cause of action. In the second cause of action, plaintiff asks for damages caused to the furnace, consisting of a fire box boiler, thermostat and electrical equipment which operated the stoker furnace.

The question for determination is stated concisely by counsel for appellant in their brief as follows: Whether loss of the furnace, controls, and electrical equipment operating the furnace comes within the terms of the policy of insurance, it being contended by appellant that such loss was the result of a "friendly" fire, and, therefore, such loss is not covered by the policy. The trial court held that the fire was a "hostile" fire and that the loss was covered by the policy.

The sole assignment of error is that the judgment rendered in favor of the plaintiff was contrary to law.

The case was submitted to the court on an agreed statement of facts, a jury being waived.

The pertinent provisions of the policy are:

"Insurance under item 1 on page one shall cover the dwelling building described therein, including building equipment and fixtures and outdoor equipment pertaining to the service of the premises (if the property of the owner of the dwelling), while located on the described premises, but not trees, shrubs, plants or lawns."

It is well established that the furnace and controls installed in a residence are a fixture. *Holland Furnace Co.* v. *Trumbull Savings & Loan Co.*, 135 Ohio St., 48, 19 N. E. (2d), 273. Thus it would seem that under the plain provisions of the policy plaintiff is entitled to recover. But the defendant company contends that the fire, with respect to the damage to the furnace and controls, was a "friendly" fire and not covered by the policy. There is little case law in Ohio on this question. In 29 American Jurisprudence, 767, Section 1016, it is stated:

"A distinction is usually drawn by the courts between a friendly and a hostile fire."

In 45 Corpus Juris Secundum, 861, Section 809, it is stated:

"While there seems to be authority to the contrary, it must be a hostile fire, that is, one which becomes uncontrollable or breaks out from where it was intended to be, and becomes a hostile element."

The principle is stated by the Supreme Court of Idaho in *Mode, Limited, v. Fireman's Fund Ins. Co.,* 62 Idaho, 270, 110 P. (2d), 840, as reported in 133 A. L. R., 791, as follows:

"The meaning of the term 'loss by fire' in fire insurance policies as being a 'hostile' and not a 'friendly' fire has been so extensively and long recognized that it must be considered, even under liberal construction, that both insured and insurer contracted with such definition in mind as determinative of what losses are covered."

The question presented to this court is whether the fire was a "friendly" fire or a "hostile" fire. We are in entire accord with both the logic and conclusions of Judge Porter, and are disposed to adopt his opinion as our own. We quote a major part of his opinion as follows:

"The claim arose out of a fire which occurred December 17, 1951—one which originated with a defective thermostatic control on the stoker. The defect was such that the stoker fed coal to the furnace* on the insured's property continuously, the heat becoming so intense that it melted the outer wall of the fire box and the flames escaped into the water compartment, through the outer wall of the water compartment and ignited the property insured.

"While the stipulation does not cover it, I think it fair to assume that if the fire had pursued its natural course, it would have completely destroyed the insured property.

"The language of the contract is the usual language employed in such policies and insures 'against all direct loss by fire * * * except as hereinafter provided, to the property * * *.' The perils not included are set out on page 2, beginning at line 11, but none is applicable.

"Such contracts must be construed most strongly against

---

*"The furnace was a single circulating steam furnace, with a fire box entirely enclosed with the exception of the door and smoke outlet, cast-iron jacket (which not only served as an outer wall of the fire box, but also as an inner wall for the boiler), an outside wall of the furnace (which also served as the outer wall of the boiler) so spaced that the water from which steam was generated in the boiler surrounded the box. The outside wall of the furnace was also cast iron and was covered with asbestos."

the insurer. *Stillpass* v. *Fidelity & Guaranty Fire Corp.*, 71 Ohio App., 197 (1942). Where, by their express terms, such policies insure the plaintiff against loss or damage to his buildings by fire as the one does in this case, they are broad enough to include all fires however originating, and all damages therefrom regardless of their character. If such policies expressly except certain occasions of fire, all other occasions or causes are included in the risk. An exception which the insurer desires to enforce should be plainly expressed. Appleman, Insurance Law and Practice, Volume 5, Section 3082.

"However, the courts make distinctions between friendly and hostile fires,.saying that 'fire' as used in fire policies means a 'hostile' fire and not a 'friendly' fire. *Pacific Fire Ins. Co.* v. *C. C. Anderson Co. of Nampa* (D. C. Idaho), 47 F. Supp., 90.

" 'If the fire burns in a place where it is intended to burn, although damages may have resulted where none were intended, the fire is a friendly fire, and the insurer is not liable for damages flowing therefrom. A friendly fire refers to one which remains confined within the place intended, and refers to a fire in a furnace, stove, or other usual place. A hostile fire, on the other hand, means one not confined to the place intended, or one not intentionally started; and it is generally considered to refer to such a fire which, if it had pursued its natural course, would have resulted in a total or partial destruction of the insured property. When a friendly fire escapes from the place it ought to be to some place where it ought not to be, causing damage, it becomes a hostile fire for which the insurer is liable.' Appleman, Insurance Law and Practice, Volume 5, Section 3082.

"One of the authorities for the foregoing text statement is the leading case of *Progress Laundry & Cleaning Co.* v. *Reciprocal Exch.* (Tex. Civ. App., 1937), 109 S. W. (2d), 226 at 227, which appears to be on all fours with the case at bar. In other words, the dispute was as to the insurer's liability for damages to a furnace from a fire which originated with the furnace and escaped from it to the insured property. As to the insurer's liability for the damage to the boiler the court said that when the lower tubes of a boiler melted and the fire *under the boiler entered and burned in the compartment intended for water*

(this case) a fire became a hostile fire, so that damages thereafter occasioned to the boiler were within the coverage of a fire policy.

"The court, therefore, held that when the fire became hostile, 'all the damages to the boiler and its component parts thereafter occasioned by the fire were such as coming under the coverage of the policy.'

"This court feels that the rule as stated by the Texas court is supported both by reason and authority. Its application to the agreed facts requires a finding for the plaintiff.

"The cases cited by the defendant have been examined and found distinguishable. They are:

"*First Christian Church* v. *Hartford Mutual Ins. Co.*, decided by the Tennessee Court of Appeals, April 20, 1954, Vol. 8, P. 277, C. C. H. 'Fire and Casualty Cases'; *McGraw* v. *Home Ins. Co. of New York*, 93 Kan., 482, 144 P., 821; *American Towing Co.* v. *German Fire Ins. Co.*, 74 Md., 25, 21 A., 553; and *Mitchell* v. *Globe & Rep. Ins. Co.*, 28 A. (2d), 803.

"The Tennessee case contains an excellent review of the authorities. It involves a claim for boiler damage but 'there was no appreciable damage done to anything other than the furnace.'

"That being the case, the court said, 'under the circumstances it is evident that this was a "friendly" as distinguished from a "hostile" fire which caused the damage to the furnace.'

"The Kansas case involved a claim for damages to a laundry boiler, and the question before the court was whether the fire was intentionally set, or whether the fire was caused through the negligence of an employee. It was not a case such as the one before this court where the fire was communicated to the insured property.

"* * * *

"The case of *Mitchell* v. *Globe*, etc., *supra*, was one growing out of a claim for damage to a boiler where the flame was not communicated to the insured property so it is not applicable.

"But the early Atlantic case, the *American Towing case*, did involve a claim for damages to a boiler, and for damage to

the insured boat, to which flames from the boiler were communicated. It has received no discussion by leading text writers on the subject, but seems rather to be limited to marine losses by fire (Appleman, *supra*, Section 3261, n. 12 [P. 413]).

"While there are no Ohio cases in point, the case of *Stillpass* v. *Fidelity & Guaranty Fire Corp.*, *supra*, should be noted because it arose out of facts which called into question whether or not a fire was 'friendly' or 'hostile.'

"There is no statement of facts, but from what was said in the opinion, it is reasonable to assume that there was originally an innocent fire, followed by an explosion of fumes from something stored on the premises, followed by fire which was communicated to the property insured.

"After reviewing the Ohio cases relied on by the appellant, Judge Matthews noted that the distinction between a 'friendly' fire and a 'hostile' fire, while no doubt sound when properly construed and applied, is of very little value in reaching a conclusion in a specific case which turns on the application of the exact language of the policy to the circumstances disclosed by the evidence. 'It requires more discrimination,' he said, 'than that expressed by such slogans. In this case the fire was both friendly and hostile. While it was serving the purpose intended, it could be said to be friendly, but when it got beyond control and became destructive, it ceased to be friendly and became hostile.'

"That respected court cited with apparent approval the holding of *Renshaw* v. *Missouri State Mut. Fire & Marine Ins. Co.*, 103 Mo., 595, 15 S. W., 945, in which the loss sought to be recovered resulted from a fire which followed an explosion set off by a gas flame's ignition of fumes of explosives stored. Of particular interest in that decision is the statement cited with approval—'It *could* make no difference how innocent the original fire, whether used to light or heat a room, or to run machinery; *if communicated to the property insured*, the loss would be by fire. It is seldom, conflagrations originate from other causes than that of an innocent and lawful fire.' (Emphasis supplied.)"

We also conclude that the fire was a "hostile" fire; that the loss occurring to the furnace and controls was caused by a "hostile" fire; and that the plaintiff is entitled to recover.

We find no error in the record prejudicial to the rights of the appellant; the judgment is affirmed.

*Judgment affirmed.*

MILLER, P. J., and HORNBECK, J., concur.